UNITED STATES of America,
Plaintiff,

v.

Jose HUERTA–RODRIGUEZ,
Defendant.

No. 8:04 CR 365.

United States District Court,
D. Nebraska.

Feb. 1, 2005.

Christian A. Martinez, Assistant United States Attorney, Omaha, NE, for Plaintiff.

Jessica L. Milburn, Federal Public Defender's Office, Omaha, NE, for Defendant.

## MEMORANDUM OPINION

BATAILLON, District Judge.

Defendant is before the court for sentencing pursuant to the United States Sentencing Guidelines ("the Guidelines"), which have been rendered advisory under the Supreme Court's recent decision in *United States v. Booker,* — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

### I. BACKGROUND

In *Booker,* the Supreme Court found that its holdings in *Blakely v. Washington,* — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Apprendi v. New Jersey,* 530 U.S. 466, 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), apply to the United States Sentencing Guidelines ("Guidelines"). *Booker,* — U.S. at —, 125 S.Ct. at 756 (Stevens, J., opinion of the Court) (hereinafter, "substantive majority opinion"). Thus, the Sixth Amendment will be violated by the imposition of an enhanced sentence under the Guidelines based on a sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant. *Id.* The *Booker* decision "reaffirms the holding in *Apprendi:* Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.*

Having found that the Sixth Amendment precludes the enhancement of a sentence based on a court's finding of a

sentence-enhancing fact, the Supreme Court, in a separate opinion, next considered the question of whether, "the Sentencing Guidelines as a whole would be inapplicable ... such that the sentencing court must exercise its discretion to sentence the defendant within the maximum and minimum set by statute for the offense of conviction." *Id.* at 756–57 (Breyer, J., opinion of the Court) (hereinafter, "remedial majority opinion"). The Court answered the remedial question by severing and excising the provision of the federal sentencing statute that makes the Guidelines mandatory, thus rendering the Guidelines effectively advisory. *Id.* at 757. The Court also excised the provision setting forth appellate standards of review, 18 U.S.C. § 3742, holding that sentences should be reviewed under the standard of "reasonableness," determined with reference to the standards set forth in 18 U.S.C. § 3553(a), which "sets forth numerous factors that guide sentencing." *Id.* at 757, 765–66. Post-*Booker*, the Sentencing Reform Act (SRA) requires a sentencing court to regard the Guidelines ranges as one of many factors to consider in determining the sentence.[1] *Id.* at 766 (remedial majority opinion); 18 U.S.C. § 3553(a). Accordingly, this court is not bound by the Guidelines but must "consult" them and "take them into account when sentencing." *Id.* at 767 (remedial majority opinion); *see also id.* at 790 (Scalia, J., dissenting in part) (noting that "district courts have discretion to sentence anywhere within the ranges authorized by statute—much as they were generally able to do before the Guidelines came into being.").[2]

■ Significantly, the Supreme Court neither held, nor implied, that the measure of reasonableness is the Guideline sentencing range.[3] Indeed, this court is mindful that "any system which [holds] it *per se* unreasonable (and hence reversible) for a sentencing judge to reject the Guidelines is indistinguishable from the mandatory system" that the Supreme Court found unconstitutional. *Id.* at 794 (Scalia, J., dissenting). This court's determination of reasonableness in the first instance, then, will be guided by the statutory factors set out in 18 U.S.C. § 3553(a), together with consideration of the now-advisory Guidelines. *See id.* at 766–767 (remedial majority opinion).

1. The district court remains charged under the SRA with the duty to "impose a sentence sufficient, but not greater than necessary," to comply with sentencing purposes and to "consider the nature and circumstances of the offense and the history and characteristics of the defendant" in so doing. *See* 18 U.S.C. § 3553(a)(1). The court must further consider "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *See* 18 U.S.C. § 3553(a)(2). In addition, the court must consider, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the Guidelines, and its policy statements, as well as the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(3)-(6).

2. As discussed later in this opinion, a district judge's discretion is more constrained post-*Booker* than it was under the pre-Guidelines system.

3. Interestingly, the court also avoided couching its holding in terms of the "statutory maximum," referring instead to "maximum authorized by the facts," *Booker*, —— U.S. at ——–——, 125 S.Ct. at 752–53 (substantive majority opinion) (commenting that "[m]ore important than the language used in our holding in *Apprendi* are the principles we sought to vindicate").

Although the advisory Guidelines system does not arouse Sixth Amendment concerns to the extent that a mandatory Guidelines system does, *see id.* at 750 (substantive majority opinion) (stating "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant"), this is not to say that there are no longer any constitutional constraints on sentencing under *Booker*, even as applied to the now-advisory Guidelines system. *See, e.g., McMillan v. Pennsylvania,* 477 U.S. 79, 87, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (due process will be violated when the finding of a sentencing factor becomes "a tail which wags the dog of the substantive offense"), *see also Booker,* —— U.S. at —— n. 6, 125 S.Ct. at 798 n. 6 (Thomas, J., dissenting in part) (stating that the Court's holding in *Booker* corrects the Sentencing Commission's mistaken belief, set out in U.S.S.G. § 6A1.3, p.s., that the preponderance of evidence standard is appropriate to meet due process requirements—"[t]he Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by a jury or admitted by defendant."). The Due Process Clause is implicated whenever a judge determines a fact by a standard lower than "beyond a reasonable doubt" if that factual finding would increase the punishment above the lawful sentence that could have been imposed absent that fact. *Id.* at 754–55; *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348. *Booker* does not alter these due process constraints on sentencing.[4] *See Blakely,* 124 S.Ct. at 2539–40.

Thus, the contention that *Booker* signals a return to pre-Guidelines discretion is an overstatement. In contrast to the unfettered and unreviewable discretion to sentence a defendant at any point within a broad statutory range that existed prior to the Guidelines, a sentencing court's discretion is now constrained by the notion of "reasonableness." *See Booker,* —— U.S. at —— - ——, 125 S.Ct. at 765–66. Because a district court's determination can be reviewed for reasonableness, and can accordingly be reversed if found unreasonable, the upper limit of a lawful sentence is no longer the "maximum term of imprisonment" under a statute that sets out a generally broad range (i.e., the "statutory maximum"), but the highest point within that range that is "reasonable." *See id.* at 748–49, 754–56 (substantive majority opinion) (referring to upper limit as "maximum authorized by facts established" by guilty plea or jury verdict and stating that constitutional safeguards do not concern the ability of the legislature to define criminal conduct but involve only the required procedures for finding the facts that determine the maximum permissible punishment), 765 (remedial majority opinion) (outlining standard of appellate review), 797 (Thomas, J., dissenting) (referring to upper limit as "lawfully imposed sentence"). It cannot be seriously disputed, for example, that it would be unreason-

4. Although the precise contours of those constraints remain to be determined, this court must nonetheless attempt to reconcile the inherent discord between *Booker's* substantive majority opinion, which finds a constitutional violation, and a remedy crafted by judges who, for the most part, disagree with the essential substantive finding. *Compare Booker,* —— U.S. at —— - ——, 125 S.Ct. at 752–56 (substantive majority opinion) *with id.* at 757–69 (remedial majority opinion), *and id.* at 771–789 (Breyer, J. dissenting in part); *see also Blakely,* —— U.S. at ——, 124 S.Ct. at 2551 (Breyer, J., dissenting). If not properly construed, *Booker's* remedial scheme risks thwarting the purposes of its substantive majority holding.

able to impose the imposition of the maximum sentence of twenty years on a first-time offender for distribution of a small amount of a controlled substance.[5]

■ The fact that this court's discretion is cabined, post-*Booker*, by the requirement of reasonableness means that the court cannot sentence a defendant above a reasonable point within a sentencing range without affording procedural protections under the Fifth and Sixth Amendments. *See id.* at 752 (substantive majority opinion) (referring to facts that enhance sentencing ranges and the need to preserve Sixth Amendment substance); *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348 (stating that the relevant inquiry is not one of form but of effect—"does the requisite finding expose the defendant to greater punishment?"); *see also id.* at 499–502, 120 S.Ct. 2348 (Thomas, J., concurring) (stating that the impact of a certain fact on a sentence is of consequence to the Constitutional analysis). It is this court's task, then, to determine that reasonable point.

■ In making that determination, *Booker* instructs that the court "consult" and "take into account" the Sentencing Guidelines. *Booker*, —— U.S. at ——, 125 S.Ct. at 767. The court cannot adopt the position advanced by the government that a criminal sentence should fall within the Guidelines range, absent highly unusual circumstances. Such wholesale application of the Guidelines as *per se* reasonable effectively converts the now-advisory guidelines to mandatory guidelines triggering unconstitutionality in the same way the Washington guidelines did in *Blakely*. *See Blakely*, —— U.S. at ——, 124 S.Ct. at 2538; *Booker*, —— U.S. at ——, 125 S.Ct. at 749. Similarly, the court will not preserve a "de facto" mandatory Guidelines

scheme by affording the Guidelines a presumption of reasonableness in every case. Such an interpretation of the *Booker* remedy would circumvent *Booker's* substantive holding, and would defy the directive that the court consider the factors in 18 U.S.C. § 3553(a).

■ In "consulting" and "taking into account" the Guidelines, the court considers that the Guidelines were developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing at 11–12 (Nov.2004) (hereinafter, "Fifteen–Year Assessment"). The Sentencing Commission ("Commission") was originally charged by Congress with developing guidelines to meet the "purposes of punishment" set out in § 3553(a)(2), and to achieve proportionality, crime control through incapacitation and deterrence, and rehabilitation. *Id.* at 12–13. Toward that end, the Commission developed and used data on past practices and recidivism in formulating the Guidelines. *See id.* at 14. Accordingly, the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices. *Id.* at 14. Based on those statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. *Id.* Accordingly, in many cases, the Guidelines represent a reasonable estimation of a fair sentencing range.

However, for policy reasons and because statutory mandatory minima dictated many terms of the drug-trafficking guidelines, the Commission departed from past

5. Nor, for that matter, in the present case, can it be seriously disputed that it would be unreasonable to impose the statutory maximum term of twenty years of imprisonment for scanning and printing a twenty-dollar bill on a home computer and cashing it for food at a Kwik Shop.

practices in setting offense levels for such crimes as fraud and drug trafficking. *Id.* at 15. Consequently, and based also on its own experience and familiarity with state court sentencing, the court finds Guideline ranges of imprisonment for those crimes are less reliable appraisals of fair sentences.[6] Also, the fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice. *Id.* at 23–24. To that end, prosecutors have been directed to "charge and pursue the most serious, readily provable offense or offenses that are supported by the facts of the case, except in limited, enumerated circumstances." *Id.* at 24. Because sentencing uniformity is crucially dependent on charging uniformity, the Commission built mechanisms into the Guideline scheme— the multiple count rule, cross-references to other Guidelines sections and the relevant conduct rule—to ameliorate the effects of uneven charging. *Id.* at 24–25. These provisions attempt to convert the Guidelines scheme to a "real offense" system, as opposed to a "charge offense" system. *Id.* In this court's experience, the Department of Justice does not always "charge and pursue the most readily provable" (beyond a reasonable doubt) crime, especially in drug prosecutions, with the result of introducing more disparity in the system.[7] *See Booker,* —— U.S. at —— n. 11, 125 S.Ct. at 782 n. 11 (Stevens, *J.,* dissenting in part)

(gathering authorities in footnote and noting in text that "a prosecutor who need only prove an enhancing fact by a preponderance of evidence has more bargaining power than if required to prove the same fact beyond a reasonable doubt").

 Despite its salutary goals, empirical evidence shows that presentencing practices such as charging and plea bargaining continue to introduce significant disparities into the sentencing regime. Fifteen–Year Assessment, Executive Summary at xii. Government motions for departures for substantial assistance have also contributed significantly to disparity and unfairness under the Guidelines. *Id.* at xiii. Moreover, it is clear that there are regional disparities in the regime. *Id.* at xii; *see also Booker,* 125 S.Ct. at 782 n. 11 (Stevens, J., dissenting in part). With respect to immigration offenses, "a series of policy decisions by Congress and the Commission have steadily increased the severity of punishment" for illegal entry. Fifteen–Year Assessment at 24, 62–65 (noting that length of time served by immigration offenders nearly tripled between 1990 and 2001), 86, 88 (regarding local "adaptations" to the Guidelines and the formalization of such adaptations in regional fast-track directives, some now adopted in PROTECT Act); *see also Booker,* 125 S.Ct. at 782 n. 11 (Stevens, J., dissenting in part). Accordingly, with the knowledge that the

---

**6.** The Guidelines' quantity-driven, "market-oriented" approach also contributes to disparity and unreliability in drug sentencing. *See Neal v. United States,* 516 U.S. 284, 296, 116 S.Ct. 763, 133 L.Ed.2d 709 (noting incongruity between mandatory minimum sentences and Guidelines.) The quantity system was developed to punish bigger distributors more harshly, but practices of charging conspiracies over a long period of time has the result of aggregating many small distributions so as to make a long-term small quantity distributor look like a large-quantity distributor. For example, a distributor responsible for selling one gram at a time a hundred times gets the same sentence as the dealer caught selling 100 grams only once.

**7.** The court does not necessarily criticize this practice, which may at times be based on an assessment that the resulting sentences would be unreasonably harsh or draconian. *See* Fifteen–Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply").

Guidelines do not necessarily represent a reliable indication of reasonableness in every case, the court will take the Guidelines into account, making an individual assessment of the reasonableness of the proposed Guidelines range in conjunction with the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a).

 In order to comply with due process in determining a reasonable sentence, this court will require that a defendant is afforded procedural protections under the Fifth and Sixth Amendments in connection with any facts on which the government seeks to rely to increase a defendant's sentence.[8] The court notes that nothing prevents a defendant from waiving his right to a jury trial and consenting to factfinding by the court. *See Blakely,* —— U.S. at ——, 124 S.Ct. at 2541 (noting that "when a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding"); *Duncan v. Louisiana,* 391 U.S. 145, 158, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). When a defendant pleads guilty, he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A waiver of the right to a trial by a jury, however, does not equate to a waiver of the right to have the government prove its case beyond a reasonable doubt. *See id.* (stating that pleading guilty implicates the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to confront one's accusers, and the Sixth Amendment right to

trial by jury with no mention of the burden of proof).

 There is no authority to support the contention that a defendant can consent to a change in the burden of proof for a criminal prosecution. This is so because the burden of proof is not the defendant's to waive. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (noting the importance "in a free society that every individual going about his ordinary affairs have confidence that the Government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty"); *see also Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) ("The Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires."); *Sullivan v. Louisiana,* 508 U.S. 275, 278, 282–83, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (stating that "the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt" and noting that an instructional error incorrectly describing the burden of proof will vitiate the jury's findings: "[d]enial of the right to a jury verdict of guilt beyond a reasonable doubt" is structural error not subject to harmless error review); *Estelle v. McGuire,* 502 U.S. 62, 72 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense"); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)

---

**8.** This approach is similar to that undertaken by the court after the *Blakely* opinion was issued. *See United States v. Terrell,* No. 04–CR–24, 2004 WL 1661018 (D.Neb. July 22,

2004). This approach may not be mandated by *Booker,* but it is not inconsistent with, nor prohibited by, *Booker.*

(finding the *Winship* doctrine, "establishing so fundamental a substantive constitutional standard, must also require that the factfinder will rationally apply that standard to the facts in evidence"); *Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (recognizing a limit on state authority to reallocate traditional burdens of proof).

 The court is cognizant that the limits of due process are defined with reference to the line that separates an element of a crime from a sentencing factor. *See, e.g., Blakely,* 124 S.Ct. at 2537 n. 5; *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348; *Harris v. United States,* 536 U.S. 545, 552–53, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); *Jones v. United States,* 526 U.S. 227, 233, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). That line remains blurred after *Booker. See Booker,* —— U.S. at ——, 125 S.Ct. at 755 (substantive majority opinion) (addressing sentencing factor/element distinction and identifying constitutional safeguards as formality of notice, identity of factfinder and the burden of proof). In view of the uncertainty surrounding this issue, the court will err on the side of caution in protecting a criminal defendant's constitutional rights. Just as a court should construe a statute to avoid a constitutional infirmity if possible, *see Clark v. Suarez Martinez,* —— U.S. ——,

——, 125 S.Ct. 716, 724, 160 L.Ed.2d 734 (2005), prudence dictates that the court should adopt sentencing procedures that lessen the potential that a sentence will later be found unconstitutional. Requiring that Fifth and Sixth Amendment procedural safeguards be afforded to enhancing facts will achieve this goal—the court will apply the same standard of proof to the factual showing that would be applied in reviewing the sufficiency of evidence to support the finding, or in conducting harmless error review on appeal, e.g., whether a reasonable juror could have found the fact beyond a reasonable doubt.[9] *See Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Chapman v. State of Cal.,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[10]

 Whatever the constitutional limitations on the advisory sentencing scheme, the court finds that it can never be "reasonable" to base any significant increase in a defendant's sentence on facts that have not been proved beyond a reasonable doubt. *See Ring v. Arizona,* 536 U.S. 584, 592–93 n. 1, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (holding that any fact essential to imposition of the death penalty must be submitted to a jury and found beyond a reasonable doubt); *Apprendi,* 530 U.S. at 477, 120 S.Ct. 2348 (2000) (finding a sentence violates the right to "a jury determi-

---

**9.** Although a misallocation of factfinding responsibility (judge versus jury) does not warrant retroactive application, *Schriro v. Summerlin,* —— U.S. ——, ——, 124 S.Ct. 2519, 2523, 159 L.Ed.2d 442 (2004), the same cannot be said for the retroactivity of application of a preponderance of evidence standard as opposed to a reasonable doubt standard. *See Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) (giving retroactive effect to rule requiring proof of all elements of crime beyond a reasonable doubt and voiding presumptions that shift the burden of proof to defendant); *Ivan v. City of New York,* 407 U.S. 203, 205, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972) (holding that the pur-

pose of a reasonable doubt standard is "to overcome an aspect of a criminal trial that impairs the truth-finding function, and *Winship* is thus to be given complete retroactive effect"). Application of a lower standard of proof may be an error that significantly affects factfinding accuracy and undermines society's confidence in the result.

**10.** This procedure will work no disadvantage to the government; the government may provide constitutional due process notice to a defendant in either a superseding indictment or an information prior to either a trial or the entry of a guilty plea.

nation that [the defendant] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"); *Jones v. United States,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215 (1999) (holding that the carjacking statute, if construed as defining a single crime with three maximum penalties instead of. three distinct offenses would violate the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment).

 In view of the foregoing, this court finds that it will continue to require that facts that enhance a sentence are properly pled in an indictment or information, and either admitted, or submitted to a jury (or to the court if the right to a trial by jury is waived) for determination by proof beyond a reasonable doubt. The court finds that although *Booker's* Sixth Amendment holding may not require such a procedure, it is not precluded. It is up to this court to determine a reasonable sentence and the court will not rely on facts proved to a mere preponderance of evidence in order to increase a defendant's sentence to any significant degree. To the extent that the government intends to rely on the proof of any fact to enhance a defendant's sentence, that fact must be pled, by indictment or information, and either admitted or proved.

## II. DISCUSSION

Defendant, an illegal alien, was indicted and charged with illegal reentry into the United States after having been convicted of an aggravated felony and deported, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Filing No. 1. The statutory range of imprisonment for that crime is up to twenty years. 8 U.S.C. § 1326(b). The indict-

ment charged that defendant had been convicted of "assault by means likely to produce great bodily injury" in January 2000, and was sentenced to two years' incarceration for that crime. *Id.* He filed a petition to enter a plea of guilty to the charge on November 3, 2004.[11] Filing No. 12. In his petition he stated as the factual basis for his plea that "I am in here in the U.S., I was previously deported and I did not have permission to come back." *Id.* at 14.

A presentence investigation report ("PSR") was prepared by the United States Probation Office ("Probation Office") and distributed to the parties. The PSR indicates that he was arrested for commission of the assault crime in 1995. In the PSR, the Probation Office determined defendant's base offense level to be 8 under U.S.S.G. § 2L1.2. The offense level was then increased by 16 levels to level 24 under U.S.S.G. § 2L1.2(b)(1)(A)(ii) based on defendant's reentry into the United States after a conviction for a violent felony. Defendant was entitled to a three-point reduction for acceptance of responsibility, resulting in a total offense category of 21. The Probation Office calculated defendant's criminal history category was VI, assessing ten criminal history points for convictions and three for the recency of the present offense.

At sentencing, both the government and the defendant objected to ¶ 39 of the PSR, contending that the two criminal history points assessed therein were incorrect. Accordingly, that paragraph will be stricken. The parties thus agreed that defendant's criminal history category under the advisory Guidelines should be V. Defendant's criminal history calculation was

---

**11.** Defendant did not enter into any plea agreement with the government because he did not want to be bound by a plea agreement in the event the Guidelines were ruled unconstitutional or inapplicable by the Supreme Court. At oral argument, the government conceded that its proposed plea agreement would have involved a sentence of 57 months.

based on the assessment of numerous points for several misdemeanor convictions for driving while intoxicated.

At allocution, defense counsel made statements that would have amounted to a motion for downward departure for over-representation of criminal history category under the former mandatory Guidelines sentencing scheme. The government consented to a three-point reduction for acceptance of responsibility and stated that it was not averse to a sentence at the low end of what it considered to be the proposed advisory Guideline range, or 70 months, based on an offense level of 21 at criminal history level V. The government also conceded that it would not oppose a sentencing range of 57 to 70 months, which is the sentence, including a "fast track" departure, that it proposed in the plea agreement.

The court will thus determine defendant's reasonable sentence, under *Booker's* remedial scheme, —— U.S. at ——–——, 125 S.Ct. at 766–67 (remedial majority opinion), mindful that "[i]n fulfilling its duty to impose a sentence sufficient, but not greater than necessary, to comply with sentencing purposes," the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." See 18 U.S.C. § 3553(a)(1). The court has further considered the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the

most effective manner. *See* 18 U.S.C. § 3553(a)(2). In addition, the court has considered, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines, and any policy statements promulgated thereto. 18 U.S.C. § 3553(a)(2). Also, the court has considered the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct and the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(6) & (7). The court has consulted the Guidelines and has taken them into account.

 In consideration of the foregoing, and further considering the purposes of punishment and the need to deter such conduct, the court finds a sentence of 36 months is reasonable in this case. The court notes that under the mandatory Guidelines system, the court would have granted defendant's motion for a downward departure with respect to criminal history category, making his criminal history category IV.[12] Although there is no doubt that driving while intoxicated is a serious offense, it does not involve the same level of culpability as the crimes of violence that form the basis of the steep increase in sentence under the Guidelines. Also, the court notes that the "enhancing fact" that increased defendant's base offense level (before any adjustments for acceptance of responsibility or departures) from 8 to 24 was a conviction for an offense that occurred almost ten years ago. Further, defendant has shown that he has been living and working in Nebraska for many years and is now married to a citizen. The court has also considered the

**12.** Imprisonment for three years is midway between the lowest advisory Guideline sentence, after adjustments, of six months for illegal reentry after having been deported

(Level 6 at Category IV) and fifty-seven months (or four years and nine months) for illegal reentry after a violent felony (Level 21 at category IV).

regional sentencing disparities that occur in the prosecution and charging of immigration offenses and has considered that in other districts a similar defendant would not be prosecuted for illegal entry, but would be simply deported. Although there is no doubt that driving while intoxicated is a serious offense, it does not involve the same level of culpability as the crimes of violence that form the basis of the steep increase in sentence under the Guidelines. Also, the court has considered that defendant served a substantial sentence for the violent felony, and has not committed any crimes of violence for ten years.

Under section 3553(a)(1), the court has considered "the nature and circumstances of the offense and the history and characteristics of the defendant." Defendant is 32 years old with a relatively clear record, except for alcohol-related incidents. The court finds that this sentence will adequately reflect the offense seriousness, promote respect for the law, provide just punishment and afford adequate deterrence. 18 U.S.C. § 3553(a)(1)(A) & (B). To the extent that this court is able to discern any sentencing disparity, the court finds that the sentence imposed herein will not materially impair the achievement of the sentencing goal of imposing similar punishments upon similarly situated defendants. Defendant is likely to be deported, but in the event he is not deported or returns to the United States, a supervised release term of three years will be imposed.

A judgment and order of commitment, together with a statement of reasons, in conformity with this Memorandum Opinion will issue this date.