**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bobby Joe WHITMORE, Defendant–**
**Appellant.**

No. 05–6331.

United States Court of Appeals,
Sixth Circuit.

Aug. 25, 2006.

Before: BOGGS, Chief Judge, and BATCHELDER, Circuit Judge; BELL, District Judge.*

PER CURIAM.

Defendant Bobby Joe Whitmore was convicted following a guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He was sentenced to a 94–month term of imprisonment, to run consecutively to sentences on two state-court convictions. He appeals his sentence on two grounds: (1) the district court erred in granting a four-level enhancement for use of a firearm in connection with another felony under Section 2K2.1(b)(5) of the United States Sentencing Commission Guidelines; and (2) the sentence imposed by the district court was not "reasonable" within the meaning of *United States v. Booker,* 543 U.S. 220, 125

S.Ct. 738, 160 L.Ed.2d 621 (2005). For the reasons that follow, we **AFFIRM.**

## I.

On January 22, 2005, Benton County Sheriff's Department Deputies Alan Bolan, Jeff Arnold and Lee Haswell, accompanied by Carroll County Sheriff's Department Investigator Tim Meggs, went to 3135 Park Road, Westport, Tennessee, to arrest Defendant Whitmore on outstanding warrants out of Carroll County. Whitmore resided at that address with Alicia Dawn Adams and their five children. Adams answered the door and told the officers that Whitmore had fled into a nearby wooded area behind the house. The officers began to search the wooded area for Whitmore. While searching, Investigator Meggs stepped on a rifle that had been wrapped in a sheet and covered with leaves. Also wrapped in the sheet was a plastic sack with a handgun barrel sticking out of it.

The officers obtained Adams' written consent to search the property. During the search, they seized the rifle, a 7.62–mm Mauser, and the handgun, an AMT Back-up .22–caliber semiautomatic pistol. The officers also found a plastic tote tub, which had been covered with leaves and hidden in a ditch a short distance from the rifle and AMT handgun. The plastic tote contained numerous items used in the manufacture of methamphetamine. A short distance from the tote, the officers discovered a plastic bag containing two coffee cans. The cans themselves contained a quantity of marijuana divided into separately bagged small quantities and a Ruger .22–caliber semiautomatic pistol, which was loaded with two live rounds. Officers also searched the residence and a

* The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

shed located on the property. They recovered from the house a small amount of marijuana and additional items known to be used in the manufacture of methamphetamine, including a bag of ephedrine pills. In the shed, they located approximately 66 grams of crushed pseudoephedrine pills and other items used to manufacture methamphetamine.

The officers did not find Whitmore on January 22, 2004, but they arrested Alicia Adams and took her into custody on charges related to the manufacture and/or distribution of methamphetamine and marijuana. On January 23, 2004, Whitmore voluntarily appeared at the Benton County Sheriff's Department, where he was arrested on the outstanding warrants from Carroll County. After being given his *Miranda* warnings, he gave a written statement, admitting that he had grown and smoked marijuana and had manufactured methamphetamine:

> Everything found in the woods is mine. I do cook meth average twice a month. Alicia had no knowledge of stuff in woods besides maybe couple of guns, I removed when Sherriff's Office was arriving. I growed some weed this year, just to see if I could. For personal use, weed is my drug. I grew approx. ½ lb.

The collective volume of marijuana seized from Whitmore's home and property totaled approximately 100 grams.

On January 25, 2005, Whitmore was indicted by a federal grand jury in the Western District of Tennessee on the offense of being a felon in possession of a firearm, in violation of Title 18 U.S.C. § 922(g). Whitmore entered a guilty plea on April 28, 2005.

A Presentence Investigation Report ("PSI") was prepared prior to sentencing. In that report, the probation officer calculated the sentence under the advisory Sentencing Guidelines. Under the Guidelines, the probation officer calculated the base offense level at 20, with a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A), because the offense involved three firearms, and a four-level enhancement under U.S.S.G. § 2K2.1(b)(5), because Whitmore possessed firearms in connection with other felony offenses (possession of marijuana with intent to distribute and manufacture and/or attempt to manufacture methamphetamine). The PSI also recommended that Whitmore receive a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and (b). The total recommended offense level was 23. The calculation of Whitmore's criminal history category resulted in a score of 15, placing Whitmore in the criminal history category of VI. The resulting sentence calculations led to a recommended sentence of 92 to 115 months' imprisonment and three years' supervised release.

At sentencing, Whitmore raised three arguments as to why the court should sentence him to a term of imprisonment lower than the recommendation calculated under the Sentencing Guidelines. First, Whitmore argued that the four-level enhancement for possessing the firearm in connection with other felony offenses was improper because the drugs in issue were possessed solely for his own personal use, not with any intent to distribute. Second, he argued that six of the fifteen criminal history points attributed to him resulted from misdemeanor offenses. He therefore contended that the criminal history category of VI overstated the seriousness of his criminal history. Third, he argued that the court should apply its discretion under all of the sentencing considerations of 18 U.S.C. § 3553 to reduce his sentence in light of the particularly severe impact his incarceration would have on the financial

circumstances of his long-time partner Alicia Adams and their five children.

In support of his argument, Whitmore introduced the testimony of Alicia Adams as to the financial hardships caused by his incarceration. The government introduced the testimony of Sergeant Bolan and Investigator Meggs as evidence that the AMT pistol was found in the same coffee can with the marijuana packets.

The court rejected all three of Whitmore's arguments, as follows:

As I understand it, there's really [only] one substantive objection, and that is the enhancements for the use of a firearm in connection with another offense. The other issues all have to do with where he should fall in the range or without the range. They're 3553 factors. The only substantive objection I have to rule on at this point is whether or not the probation officer has correctly added the four-level enhancement on Worksheet A for use of a firearm in connection with another offense.

It's my judgment, based on all the evidence that I've heard, the defendant's guilty plea and the testimony of the officers today, that this firearm was used in connection with another offense. And I make that judgment on several different bases.

Number one, the firearm—a firearm was found in a can of marijuana that was packaged for distribution or resale. That's a strong indication to me that this firearm was used in connection with possession of marijuana with intent to resell.

There's another reason though, and that is that the possession of this equipment, materials, supplies, precursors in the production of methamphetamine is also a felony, and this firearm was in a reasonable proximity to this other equipment and materials and supplies.

Further, we've got the defendant's admission that he manufactured marijuana. Even if he were manufacturing it for his own use, manufacture of marijuana is a felony.

So for those reasons, it's my conclusion that the probation officer was correct in applying the four-level enhancement for use of this firearm in connection with another felony. So that makes the probation officer's calculations correct. Therefore, the advisory range as calculated by the probation officer is where we'll start. Now, I have to consider the other objections raised by the defendant, but our starting point is the range calculated by the probation officer, 92 to 115 months.

The defendant next states that the defendant's criminal history overstates his actual criminal history and the court should give him a sentence less than the suggested guideline range.

In looking at this defendant's criminal history, it's true that many of his convictions are for, quote, relatively minor offenses. Two of them were for juvenile offenses. And in that sense he got more points than most misdemeanants get. That's true. But, at the same time, there were six convictions that resulted in no points. So I can't say that the defendant's criminal history overstates his criminal background.

He has, in large part, been a one-man minor crime wave in West Tennessee since he was 15 years old. He had all different types of offenses. He had theft and burglary and evading arrest and absconding and just a mixture of all different kinds of offenses, which tells me that the defendant has not been a good citizen.

Now, I can't say that a criminal history of VI understates his category because VI is as high as it gets, so it clearly doesn't understate it, as suggested by the government, impliedly, but nor does it overstate it. I think that a criminal history of VI is exactly where Mr. Whitmore belongs. Given his long history of violations and failure to comply with society's rules, he's a criminal history of VI. Now it's true he got there by misdemeanors, but you can have a misdemeanant that is so repetitive in his violations that he becomes a category VI, and I think Mr. Whitmore is a VI.

Now, the other issues, the family—the impact on the family. And it's obvious in this case that Mr. Whitmore's incarceration is going to have a significant impact on his girlfriend and five children, and I sincerely regret that. It's always unfortunate in these types of cases because the family always pays a higher price than the defendant. The defendant goes off to prison, and he's got things to occupy his time, and he gets regular food and rehabilitation and training and education; and the family is just left out there in society to struggle.

But the problem, Mr. Whitmore, is that this impact on the family is caused not by the government or the laws or the judge. It's caused by you. You're the one who has put them in this shape by getting yourself convicted of this serious felony. And while I regret the impact on the family, this case is really no different than any other case I have. Every defendant I see, almost without exception, leaves family behind, and the family always suffers. And while it's unfortunate, it's not a basis in this case to give a sentence lower than the recommended range.

The court, having rejected Whitmore's arguments for a sentence below the advisory guideline range calculated by the probation officer, specifically found that "the range of sentences suggested by the guidelines in this case is an appropriate range for you." However, because the number of firearms was the minimum to qualify for the two-level increase under U.S.S.G. § 2K2.1(b)(1)(A), and because the court considered Whitmore to be a low-level category VI offender, the court sentenced Whitmore to 96 months, toward the low end of the advisory guideline range. The court also rejected Whitmore's request that the court order the federal sentence to be served concurrently with the two state-court sentences on which Whitmore then was imprisoned. Instead, the court concluded that the state-court offenses were completely unrelated to the federal offense and that a consecutive sentence therefore was appropriate.

## II.

In *Booker*, 543 U.S. at 244, 125 S.Ct. 738, the Supreme Court concluded that in the context of a mandatory sentencing guidelines scheme, the Sixth Amendment prevents federal judges from making factual determinations that increase a defendant's sentence on the basis of facts not reflected in the jury's verdict. *Id.* The Supreme Court went on to decide that "this constitutional holding required the invalidation of 18 U.S.C. § 3553(b)(1) and 3742(e), 'mak[ing] the Guidelines effectively advisory.'" *United States v. Davidson*, 409 F.3d 304, 309 (6th Cir.2005) (quoting *Booker*, 543 U.S. at 246, 125 S.Ct. 738).

When reviewing a district court's application of the advisory Sentencing Guidelines, this court accepts a district court's factual findings unless they are clearly erroneous. Mixed questions of law and fact are subject to *de novo* review. *Davidson*,

409 F.3d at 310 (6th Cir.2005) (holding that pre-*Booker* standard of review of Guidelines calculations remains essential to ensure that district court has been correctly advised of the Guidelines recommendations). A district court's ultimate sentencing determination is reviewed for reasonableness. *Booker,* 543 U.S. at 261–65, 125 S.Ct. 738; *United States v. Webb,* 403 F.3d 373, 383 (6th Cir.2005); *United States v. Jackson,* 408 F.3d 301, 305 (6th Cir.2005).

### III.

#### A. Calculations under Sentencing Guidelines

■ In his first claim of error, Whitmore argues that the district court improperly calculated his sentence under the Guidelines by granting a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for the use of a firearm in connection with another felony. He argues that he was only a user of marijuana and methamphetamine, and he denied ever engaging in drug trafficking offenses. He suggests that the only evidence that he intended to distribute marijuana was the testimony of Investigator Meggs, who gave opinion testimony that the small bags of marijuana found inside the coffee can were "likely for resale." Whitmore argues that Meggs should not have been permitted to give opinion testimony as he was not qualified as an expert under Rule 702 of the Federal Rules of Evidence.

Whitmore's claim of error fails for several reasons. First, Whitmore never objected to Meggs' opinion testimony at sentencing. In the absence of plain error, the failure of a defendant to object to the testimony presented at sentencing precludes appellate review. *See, e.g., United States v. Burton,* 334 F.3d 514, 516 (6th Cir.2003). Whitmore makes no effort to demonstrate plain error, nor could he do so. As he acknowledges in his brief, the

Federal Rules of Evidence *do not apply to* evidence considered at sentencing, as long as the court determines that the evidence possesses sufficient indicia of reliability. U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a fact important to a sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); *United States v. Sadolsky,* 234 F.3d 938, 944 (6th Cir.2000); *United States v. Silverman,* 976 F.2d 1502, 1513 (6th Cir.1992) (*en banc*). As a result, the fact that the district court considered opinion testimony that may have been outside Rule 702 of the Federal Rules of Evidence is not plain error.

Second, the testimony of an experienced police officer that marijuana packaged in small baggies suggests the intent to distribute possesses significant indicia of reliability. Common sense alone supports the testimony, since an individual is unlikely to store a personal quantity in many separate packages, unless he intends to keep them in different locations. Arguably, even to a lay person, such packaging is suggestive of intent to distribute and would not require expert testimony under the rules of evidence. Further, courts are well aware that experienced police officers have significant experience in the conduct of persons engaged with illegal drugs. As a result, the district court's factual finding that the firearms were possessed in connection with the possession with intent to distribute marijuana was entirely reasonable and supported by evidence possessing strong indicia of reliability.

Third, even if the Meggs testimony were considered unreliable as proof of Whitmore's intent to distribute the marijuana, the sentencing court did not rely solely on

the firearms' relation to the felony of possession with intent to distribute marijuana. Instead, the court specifically found that the three firearms also were possessed within reasonable proximity to the equipment, materials and supplies necessary to manufacture methamphetamine, another felony offense Whitmore admitted committing.

> Keeping in mind that "the presence of drugs in a home under a firearm conviction does not *ipso facto* support application of a § 2K2.1(b)(5) enhancement," [*United States v. Hardin,* 248 F.3d 489] *id.* at 501 [ (6th Cir.2001) ], the district court must examine the specific facts of the case before it to determine if the government established by a preponderance of the evidence that the defendant possessed or used a gun in connection with another felony. Although the "possession of firearms that is merely coincidental to the underlying felony offense is insufficient to support the application of § 2K2.1," this court has expressly adopted the "fortress theory, which concludes that a sufficient connection is established if it reasonably appears that the firearms found . . . are to be used to protect the drugs or otherwise facilitate a drug transaction."

*United States v. Clay,* 346 F.3d 173, 179 (6th Cir.2003) (quoting *United States v. Ennenga,* 263 F.3d 499, 503 (6th Cir. 2001)). Where, as here, a rifle and two handguns are hidden near one another and near illegal drugs and drug paraphernalia secreted in a wooded area behind the de-

fendant's house, the district court did not err in concluding by a preponderance of the evidence that the weapons were being used to protect those drugs or to facilitate a drug transaction.

Fourth, the district court alternatively rested its decision on Whitmore's admitted production and possession of marijuana, conduct that is itself illegal, regardless of Whitmore's intent to distribute the marijuana. The district court did not err in concluding that the fact that Whitmore placed both the marijuana and a handgun in the same coffee can and hid the can in the woods strongly supported a conclusion that the firearm was used in connection with the manufacture and possession of the marijuana.

For all the stated reasons, the district court's factual findings are not clearly erroneous, and the court correctly applied the Sentencing Guidelines to the facts found. The recommended sentence under the Guidelines, therefore, was accurately calculated.

### B. *Reasonableness of Sentence*

■ Once this court has determined that the district court properly consulted the Guidelines, the sentence is reviewed for reasonableness. *Booker,* 543 U.S. at 261–62, 125 S.Ct. 738; *United States v. Richardson,* 437 F.3d 550, 553–55 (6th Cir. 2006); *Webb,* 403 F.3d at 383. In assessing whether a sentence is reasonable, this court "has focused on the district court's obligation to consider the factors listed in 18 U.S.C. § 3553(a)[1] in arriving at an ap-

---

1. 18 U.S.C. § 3553(a) reads as follows:

   **Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

propriate sentence." *United States v. Barton*, 455 F.3d 649, 658–59 (6th Cir. 2006) (citing *Webb*, 403 F.3d at 383–85). The district court need not recite each factor under § 3553(a), "but it must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir.2005); *see also United States v. McBride*, 434 F.3d 470, 476 n. 3 (6th Cir.2006). " '[T]here must still be sufficient evidence in the record to affirmatively demonstrate the court's consideration of [the § 3553 factors].' " *See United States v. Caswell*, 456 F.3d 652, 657 (6th Cir.2006) (quoting *McBride*, 434 F.3d at 476 n. 3).

Whitmore argues that the district court's sentence was unreasonable because the court improperly treated the Sentencing Guidelines as "presumptively reasonable," thereby effectively failing to consider all of the factors set forth under § 3553(a). In support of his argument, Whitmore cites a number of district court cases that reject application of the Guidelines as *"per se* reasonable," because such treatment of the Guideline calculations "effectively converts the now-advisory guidelines to mandatory guidelines...." *United States v. Huerta–Rodriguez*, 355 F.Supp.2d 1019, 1025 (D.Neb.2005); *see also United States v. Phelps*, 366 F.Supp.2d 580, 587 (E.D.Tenn.2005) ("[T]he Court does not believe the advisory Guidelines range should be treated as a starting point or necessarily understood as representing a presumptively reasonable sentence in a given case."); *United States v. Hoskins*, 364 F.Supp.2d 1214, 1216 (D.Mont.2005) (reasoning that Supreme Court "did not intend for the Guidelines to be advisory in theory but mandatory in fact").

Whitmore mischaracterizes both the state of the law of this circuit and the process by which the district court reached its decision in the instant case. In *United States v. Williams*, 436 F.3d 706, 708 (6th Cir.2006), this court expressly held that a sentence within a properly calculated advisory Guidelines range is afforded a rebuttable presumption of reasonableness. *See also United States v. Cage*, 458 F.3d 537, 540–41 (6th Cir.2006) (reaffirming *Williams*); *United States v. Vonner*, 452 F.3d 560, 566 (6th Cir.2006) (applying presumption of reasonableness). Having determined the Guidelines recommendation, a sentencing court must consider the list of sentencing factors articulated in § 3553(a). *See Williams*, 436 F.3d at 708. Under the law of this circuit, a district court acts properly when it correctly calculates the recommended sentence under the Guide-

**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and
**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
**(3)** the kinds of sentences available;
**(4)** the kinds of sentence and the sentencing range established for—
**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and
**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
**(5)** any pertinent policy statement—
. . .
**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
**(7)** the need to provide restitution to any victims of the offense.

lines and then considers whether to deviate from that recommendation based on the other factors under § 3553(a). *Jackson*, 408 F.3d at 305; *Cage*, 458 F.3d at 543 (holding that district court did not err "by viewing Guidelines as a presumptively reasonable starting point" before weighing the Guidelines in relation to other § 3553(a) factors).

In the instant case, while the district court did not specifically list the § 3553(a) factors, the court's overall reasoning reflects that it carefully considered each factor. *See Williams*, 436 F.3d at 708–09 (reviewing evidence in the record that the district court considered the factors without reciting them); *Cage*, 458 F.3d at 543–44 (concluding that court's consideration of characteristics of offense, defendant's history and characteristics, and adequate deterrence reflected judge's application of § 3553(a) factors); *Caswell*, 456 F.3d at 657–58 (despite absence of references to § 3553(a) sentencing factors, sentencing record contains evidence that the court considered the substance of § 3553(a) sentencing factors). The district court carefully considered the first factor under § 3553(a)(1), and specifically found that each of the Guideline classifications accurately reflected the nature and circumstances of the offense and Whitmore's own history and characteristics. *See Caswell*, 456 F.3d at 657–58. In addition to carefully analyzing the specifics and weight to be given Defendant's criminal history, the court considered whether Whitmore's history of support and responsibility for his

family and their resultant financial hardships warranted the imposition of a lower sentence.[2] The district court expressly considered the relative responsibility of Whitmore *vis-a-vis* other similarly situated defendants, as contemplated by § 3553(a)(6). The court further addressed Whitmore's need for treatment of his substance abuse problem and noted Whitmore's ability to obtain vocational training in prison, as contemplated by § 3553(a)(2)(D). *Id.* In addition, the court considered whether the sentence was appropriate to address the seriousness of the offense, to deter future criminal conduct, and to protect the public from the "one-man minor crime wave" continued by Whitmore through his entire adult life. The court repeatedly noted that Whitmore's prior sentences had failed to deter his continuing criminal conduct. These considerations squarely mesh with the factors set forth in § 3553(a)(1)–(3). *Id.* Moreover, the court expressly noted Whitmore's inability to pay a fine, recommended that he be imprisoned close to home, and recommended substance abuse treatment demonstrating that he considered "the kinds of sentences available" under § 3553(a)(3). *See Williams*, 436 F.3d at 708 (noting that a district court's discussion of a defendant's ability to pay a fine is evidence that the court considered "the kinds of sentences available").

In sum, the district court's rationale and findings clearly indicate that the court carefully considered all of the factors un-

---

**2.** We observe that Whitmore's family history and obligations arguably are part of "the history and characteristics of the defendant" described in § 3553(a)(1). However, the Sentencing Guidelines themselves prohibit or discourage consideration of a defendant's family ties and responsibilities in setting a sentence, *see* U.S.S.G. § 5H1.6, and a district court is obligated to consider any pertinent policy statements under § 3553(a)(5). This

Court previously has reserved deciding what weight, if any, factors such as family ties should be given after the Supreme Court's decision in *Booker*. *See Jackson*, 408 F.3d at 305 n. 3. Because it is not necessary to the decision, we will assume without deciding that Whitmore's family history and obligations were properly considered on the same terms as any other factor under § 3553(a).

der § 3553(a). Whitmore has failed to identify any factor neglected by the district court. *See Williams,* 436 F.3d at 708 (noting that the defendant had failed to identify a factor under § 3553(a) that would have rendered his sentence unreasonable). Upon careful review of the sentencing transcript, it is apparent that Whitmore's sentence was reasonable in light of the sentencing factors under § 3553(a).

## IV.

For the foregoing reasons, we **AFFIRM** the sentence imposed by the district court.