*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

v.

No. 03-6110

BERNARD CHESTER WEBB,

> *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 03-00014—Danny C. Reeves, District Judge.

Submitted: December 10, 2004

Decided and Filed: April 6, 2005

Before: KENNEDY, MARTIN, and MOORE, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Robert D. Little, THE LAW OFFICE OF ROBERT LITTLE, Maplewood, New Jersey, for Appellant. Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

MOORE, J., delivered the opinion of the court, in which MARTIN, J., joined. KENNEDY, J. (p. 10), delivered a separate opinion concurring in part and dissenting in part.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Bernard Chester Webb ("Webb") appeals his criminal conviction and sentence in district court for possession of a machine gun in violation of 18 U.S.C. § 922(o). Specifically, Webb argues on appeal that: (1) his guilty plea was invalid as a result of the district court's failure to inform him properly of the charge against him during his change-of-plea hearing; (2) the district court erred in imposing a two-level sentence enhancement pursuant to the United States Sentencing Guidelines ("Guidelines"); and (3) the district court's sentencing determination was erroneous in light of the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005).

For the reasons discussed below, we **AFFIRM** the district court's judgment.

1

## I. BACKGROUND

On December 16, 2000, Webb was riding in a car which was stopped by Corbin, Kentucky police officers. The car's driver consented to a search of the car. While executing a search of the car, the officers discovered a Sten Model Mk5, nine-millimeter machine gun in Webb's duffel bag. Webb was then charged by information with knowing possession of a machine gun in violation of 18 U.S.C. § 922(o).

Webb entered into a plea agreement with the government under which he agreed to plead guilty to violating 18 U.S.C. § 922(o). In exchange, the government agreed to recommend at sentencing that:

(a) Pursuant to § 2K2.1(a)(3), the base offense level is 22[.] Pursuant to § 2K2.1(b)(3), 3 levels are added in that the offense involved a destructive device. Pursuant to [§] 2K2.1(b)(4), 2 levels are added in that the firearm was stolen.

(b) Pursuant to § 3E1.1(a), decrease the base offense level by 3 levels for the Defendant's acceptance of responsibility.

Joint Appendix ("J.A.") at 18 (Plea Agreement at 2). The defendant explicitly agreed to make the same recommendations at sentencing. J.A. at 18 (Plea Agreement at 2). Additionally, the plea agreement stated that the defendant waived both his right to appeal his conviction and his right to challenge his conviction or his sentence by means of collateral attack.

A change-of-plea hearing was then held in the district court, during which the district judge engaged in a dialogue with Webb aimed at ensuring that Webb was competent to enter a plea. During this exchange, Webb informed the district judge that he had received a copy of the charging information and had discussed the charge against him with his attorney. Webb's defense counsel corroborated Webb's testimony, stating that he and Webb had discussed the charge "at great length" and that the attorney felt that Webb "understands what we're doing." J.A. at 25 (Tr. of Change-of-Plea Hr'g at 5).

The district court then had the prosecutor read aloud portions of the plea agreement to ensure that Webb understood its terms. The government stated that the essential element of the information was that Webb "knowingly possessed a machine gun." J.A. at 31-32 (Tr. of Change-of-Plea Hr'g at 11-12). The government then recited the facts to which Webb stipulated by signing the plea agreement:

On December 16th of 2000, in Whitley County, which is located in the Eastern District of Kentucky, Bernard Chester Webb was a passenger in a vehicle operated by James Gary Thacker. After the vehicle was stopped by an officer of the Corbin Police Department and subsequent to a consent search authorized by Mr. Thacker, the officer located a Citizen Model [MK5 nine-]millimeter machine gun in a duff[el] bag which belonged to Mr. Webb who knew the machine gun was in the duff[el] bag and knowingly possessed the same.

J.A. at 32 (Tr. of Change-of-Plea Hr'g at 12). Finally, the government read the remainder of the plea agreement's terms, including the plea agreement's sentencing recommendations and the rights Webb waived by signing the plea agreement. Webb then acknowledged that the government had accurately summarized the terms of the plea agreement. Later, the court reiterated the facts stipulated by Webb in the plea agreement, and Webb admitted their veracity. Following Webb's admission, the district judge concluded that Webb's guilty plea was knowing and voluntary and accepted Webb's change of plea.

The district court then held Webb's sentencing hearing on August 15, 2003. The defense counsel challenged the government's recommendation that Webb receive a two-level increase for possession of a stolen machine gun pursuant to U.S.S.G. § 2K2.1(b)(4) on the ground that Webb was not aware that the firearm was stolen. The court rejected the defense's challenge, stating that "knowledge is not a requirement for the two-level enhancement" under U.S.S.G. § 2K2.1(b)(4). J.A. at 55 (Tr. of Sentencing Hr'g at 10). The district court then accepted the sentencing recommendations contained in the plea agreement and sentenced Webb to 105 months' imprisonment. Webb then filed this timely appeal.

## II. ANALYSIS

On appeal Webb has raised three claims: (1) his guilty plea was invalid as a result of the district court's failure properly to inform him of the charge against him during his change-of-plea hearing; (2) the district court erred in imposing a two-level sentence enhancement pursuant U.S.S.G. § 2K2.1(b)(4); and (3) the district court's sentencing determination was erroneous in light of the Supreme Court's recent decision in *United States v. Booker,* 125 S. Ct. 738 (2005). None of the errors raised by Webb warrants reversal of the district court's judgment.

### A. Guilty Plea

Webb alleges that his guilty plea was not knowing, voluntary, and intelligent because the district court failed to comply adequately with Federal Rule of Criminal Procedure 11. When a defendant fails to object contemporaneously to the district court's alleged failure to comply with the requirements of Rule 11, we review for "plain error." *United States v. Vonn*, 535 U.S. 55, 59 (2002). In this case, we conclude that the district court's plea colloquy was not erroneous under Rule 11 and that the district court properly accepted Webb's guilty plea.[1]

A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant. *Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). Rule 11 is meant to ensure that the district court is satisfied that the defendant's plea is knowing, voluntary, and intelligent. *See Vonn*, 535 U.S. at 58. Therefore, Rule 11 requires that a district court verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged. *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988). "[A] plea does not qualify as intelligent unless a criminal defendant first receives real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation and citation omitted).

Webb alleges that the district court failed to inform him properly of the elements of the charges against him as required by Rule 11. Rule 11 does require that before a district court accepts a defendant's guilty plea it must ensure that the defendant understands "the nature of each charge to which the defendant is pleading." FED. R. CRIM. P. 11(b)(1)(G). To satisfy this requirement,

---

[1] The government argues in its brief that we must dismiss Webb's appeal because Webb waived his right to appeal. Appellee Br. at 4-8. Admittedly, by pleading guilty and signing his plea agreement, Webb severely limited the type of claims that he could raise on appeal. *See United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001) ("A voluntary and unconditional guilty plea waives all non-jurisdictional defects in the proceedings."); J.A. at 19 (Plea Agreement at 3) (stating that "the defendant knowingly waives the right to appeal the conviction"). This waiver of Webb's right to appeal is valid, however, only if his guilty plea was knowing, voluntary, and intelligent. Therefore, Webb may challenge on appeal the validity of his guilty plea by alleging that the district court improperly conducted a Rule 11 hearing. This is true even though Webb did not raise the issue of failure to comply with Rule 11 before the district court. *United States v. Hodge*, 259 F.3d 549, 552 n.2 (6th Cir. 2001).

however, a district court judge "[i]n a simple case" need only read the indictment to the defendant and permit the defendant to ask questions about the charges. *United States v. Valdez*, 362 F.3d 903, 908 (6th Cir. 2004) (internal quotation omitted); *see also Bousley*, 523 U.S. at 618 (noting that where a defendant has been provided a copy of the information prior to a change of plea a "presumption that the defendant was informed of the nature of the charge against him" arises). While a more thorough explanation may be necessary if the charges are complex, ultimately all that is required is that "the district court . . . be satisfied, after discussion with the defendant in open court, that the defendant understands the elements of the offense." *United States v. Syal*, 963 F.2d 900, 905 (6th Cir. 1992); *see also United States v. Edgecomb*, 910 F.2d 1309, 1313 (6th Cir. 1990) (the elements of a charge need not be explained further by the district court where the charge "is simple enough for a lay person to understand").

We find ample evidence indicating that Webb was sufficiently informed of the charges against him. During the Rule 11 hearing, Webb informed the district court that he had received a copy of the information and had discussed its contents with his attorney. Webb's attorney confirmed that he had discussed the charge "at great length" with Webb and felt that Webb understood the charge. J.A. at 25 (Tr. of Change-of-Plea Hr'g at 5). The district court also had the prosecutor read the charge to Webb. The judge then questioned Webb as to his understanding of the plea agreement (which included the charge) and the factual basis for the charge.

The charge against Webb was not so complex as to require any further explanation beyond that which was provided. All that was required was that Webb understand the meaning of the terms "knowing" and "possession," both of which, under the facts of this case, are terms easily understood by a defendant. There is therefore nothing in the record to suggest that the district court failed to comply with the mandates of Rule 11. As a result, we conclude that the district court did not violate Rule 11 or err in accepting Webb's guilty plea.

## B. Sentencing

At sentencing, Webb argued that a two-level sentence enhancement for possession of a stolen machine gun pursuant to U.S.S.G. § 2K2.1(b)(4) should not apply because he had no knowledge that the machine gun was stolen. The district court disagreed with Webb and determined that U.S.S.G. § 2K2.1(b)(4) required the court to impose the sentence enhancement. Webb now appeals the district court's ruling. In addition, on appeal Webb challenges in light of *Booker* the sentencing enhancements imposed by the district court.[2] After reviewing both claims, we conclude that we must affirm Webb's sentence.[3]

### 1. *Booker* Claim

We may review Webb's Sixth Amendment claim based on *Booker* despite the fact that the Supreme Court did not issue its decision in *Booker* until after the district court sentenced Webb. *See Booker*, 125 S. Ct. at 769 (noting that the case's holdings apply to all cases pending on direct review). As Webb failed to raise a *Booker* challenge to his sentence in district court, however, we

---

[2]Webb's appellate brief did not initially raise the claim that his sentence violated the Sixth Amendment as the brief was submitted prior to the Supreme Court's ruling in either *Blakely v. Washington*,124 S. Ct. 2531 (2004), or *United States v. Booker*, 125 S. Ct. 738 (2005). Prior to our oral argument, the Supreme Court announced its decision in *Blakely*. In response, Webb filed a motion for supplemental briefing in order to raise a Sixth Amendment claim under *Blakely*. We granted Webb's motion, and both parties submitted supplemental briefs on the issue.

[3]Although the government argues that Webb waived his right to challenge his guilty plea on appeal, it is clear that the plea agreement did not limit Webb's right to challenge the validity of his sentence on direct appeal. *See* J.A. at 19 (Plea Agreement at 3) (limiting only the defendant's right to challenge his sentence by means of a collateral attack); J.A. at 37-38 (Tr. of Change-of-Plea Hr'g at 17-18) (noting the defendant's right to appeal his sentence).

can reverse only on a showing of "plain error" by the district court. *United States v. Oliver*, 397 F.3d 369, 375 (6th Cir. 2005);[4] *see also United States v. Davis*, 397 F.3d 340, 346 (6th Cir. 2005); *United States v. Calloway*, 116 F.3d 1129, 1136 (6th Cir.), *cert. denied*, 522 U.S. 925 (1997); FED. R. CRIM. P. 52(b). "We read the Supreme Court's decision in *Booker* as encouraging us to review cases like [Webb's] which are currently pending on direct appeal for 'plain error' where the Sixth Amendment issue was not raised before the district court." *Oliver*, 397 F.3d at 377-78 (citing *Booker*, 125 S. Ct. at 769). "We therefore turn to apply here Rule 52(b) as outlined in *Olano*. Under that test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (internal quotation and citation omitted).

In applying the first prong of the plain-error test we must determine whether in light of *Booker*, a sentencing error occurred. In *Booker*, the Supreme Court announced two important conclusions. First, the Court concluded that the Sixth Amendment as construed in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), does apply to sentencing pursuant to the Guidelines. Thus, *Booker* made applicable to the Guidelines the Supreme Court's past holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" or else the Sixth Amendment is violated. *Booker,* 125 S. Ct. at 756.

Second, the Supreme Court was faced with the challenge of determining how to remedy potential Sixth Amendment violations created by the mandatory sentencing enhancements under the Guidelines. Writing for the Court, Justice Breyer concluded that the proper remedy was to sever the statutory provisions that make the Guidelines mandatory in nature, thereby rendering the Guidelines "effectively advisory." *Id.* at 757. Thus, while a district court must still give some consideration to the appropriate Guidelines range when making a sentencing determination, a court is no longer bound by the applicable Guidelines. It is therefore erroneous for a district court to sentence a defendant based on the belief that the Guidelines are mandatory even if no Sixth Amendment violation results. *See id.* at 769 (remanding the defendant Fanfan's case for resentencing despite the lack of a Sixth Amendment violation).

In this case no Sixth Amendment violation occurred in light of the Supreme Court's decision in *Booker*. *Booker* made clear that a Sixth Amendment violation occurs when a district court has issued "a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict" based upon any fact (other than a prior conviction) not "*admitted by the defendant or proved to a jury beyond a reasonable doubt.*" *Id.* at 756 (emphasis added). Here, Webb admitted in the plea agreement that the machine gun qualified as a destructive device and that the machine gun was stolen. J.A. at 18 (Plea Agreement at 2) ("Defendant recommend[s] . . . [p]ursuant to 2K2.1(b)(4), 2 levels are added in that the firearm was stolen."). Therefore, no constitutional infirmities were created by the district court's reliance on these facts to enhance Webb's sentence beyond the base offense Guidelines range. *See United States v. Parsons*, 396 F.3d 1015, 1017 (8th Cir. 2005) (holding that no Sixth Amendment violation occurred when the defendant admitted as a part of his plea agreement the facts requiring a sentence enhancement under the Guidelines).

The district court did err, however, in determining Webb's sentence based on the presumption that the Guidelines were mandatory. From the record, it is clear that the district court

---

[4]Our decision in *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005), controls over any contrary, subsequent decisions. *United States v. McDaniel*, 398 F.3d 540, 549 n.7 (6th Cir. 2005).

felt bound to follow the mandates of the Guidelines. *See* J.A. at 62 (Tr. of Sentencing Hr'g at 17) (noting that Webb was being sentenced "pursuant to the Sentencing Reform Act of 1984"); J.A. at 55-56 (Tr. of Sentencing Hr'g at 10-11) ("So it really is an issue with the Sentencing Commission. They have made that a determination that knowledge is not a factor to be considered in imposing this two-level enhancement."). Given the Supreme Court's announcement in *Booker* that the Guidelines are now only advisory and do not bind the courts, the district court erred in this case. The first prong of the plain-error standard is therefore satisfied.

Webb's claim that the district court erred in treating the Guidelines as mandatory also satisfies the second prong of the plain-error test. A "plain error" is one that is "clear" or "obvious." *United States v. Olano*, 507 U.S. 725, 734 (1993). As we indicated in *Oliver*:

> The critical question in this case is *when* the error must be plain . . . The Supreme Court made clear in *Johnson* that an error need not always be obvious at the time of the district court's determination in order to be considered plain. "[W]here the law at the time of trial was settled and clearly contrary to the law at the time of the appeal [] it is enough that an error be 'plain' at the time of appellate consideration."

*Oliver*, 397 F.3d at 379 (quoting *Johnson*, 520 U.S. at 468) (emphasis in *Oliver*). When Webb was sentenced, it was uncontested that the Guidelines were mandatory in nature; however, by the time of appellate consideration, the law had changed, and it is now evident that the district court's reliance on the Guidelines as mandatory was in clear violation of *Booker*. *Id.* We therefore conclude that the second prong of the plain-error test has been satisfied.

As to the third prong of the plain-error test, we must consider whether the district court's "plain error" affects Webb's substantial rights. "In most cases [for an error to affect a defendant's substantial rights] the error must have been prejudicial." *Olano*, 507 U.S. at 734. Generally, this means that the circumstances of the case must indicate that an error caused the defendant "to receive a more severe sentence." *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004). However, in *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005), a panel of this court held that a presumption of prejudice was appropriate in cases where a defendant is sentenced under mandatory, rather than advisory, Guidelines and the district court could have imposed a lower sentence had it known that the Guidelines were merely advisory. The *Barnett* court presumed prejudice in this context because of the "extraordinary difficulty" facing defendants in showing that the use of mandatory Guidelines affected the outcome of their sentencing proceedings. *Id.* at 528. Because Webb was sentenced under the Guidelines based on the now-erroneous assumption that they were mandatory, we presume, under *Barnett*, that Webb was prejudiced by this error.

We made clear in *Barnett*, however, that this presumption of prejudice could be rebutted in those rare cases where "the trial record contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines regime." *Id.* at 529 (citing *United States v. Crosby*, 397 F.3d 103, 118 (2d Cir. 2005)). We believe that the record in this case contains such clear and specific evidence. First, the district court imposed the now-challenged sentence enhancement based not only upon the Guidelines, but also upon the very terms of Webb's plea agreement. In the plea agreement, Webb and the government both agreed to recommend that the U.S.S.G. § 2K2.1(b)(4) sentence enhancement be imposed by the district court at sentencing. Given the plea agreement recommendations and the district court's reliance upon them, we believe that Webb "merely received what he had bargained for," *Parsons*, 396 F.3d at 1018 (internal quotation marks and citations omitted), and the district court, in sentencing Webb, merely chose to impose a sentence to which the parties had agreed. Second, at sentencing, based on Webb's criminal history, the district court actually considered an upward departure from the appropriate Guideline range. In fact, the court referred to Webb as a "menace" and indicated that Webb had "not been a person that the community wants to have

around." J.A. at 61 (Tr. of Sentencing Hr'g at 16).  Finally, the court sentenced him to the maximum sentence possible within the applicable Guidelines range of 84-105 months.

Based on these facts, we conclude that this is an exceptional case where the record contains clear and specific evidence that the district court would not have sentenced Webb to a lower sentence under an advisory Guidelines regime.  The record indicates that the district court would have imposed the same sentence, if not a lengthier one, had the district court known that it was not bound by the Guidelines.  As a result, we conclude that the record in this case is sufficient to rebut the prejudice presumed under *Barnett*.  Thus, we hold that Webb's substantial rights were not affected by the district court's use of mandatory Guidelines and, therefore, that the district court did not violate the plain-error standard when it made its sentencing determination.

### 2.  Reasonableness of Sentence

Having concluded that the district court's erroneous belief that it was bound by the (now-advisory) Guidelines did not constitute plain error under the special circumstances of this case, we must now address Webb's claim as to the district court's Guidelines calculation.  Webb contends that the district court erred by imposing a sentence enhancement pursuant to U.S.S.G. § 2K2.1(b)(4) because Webb was not aware that the machine gun was stolen.  Prior to *Booker*, our review of Webb's claim would have hinged upon the district court's application of the (then-mandatory) Guidelines.  In order to remedy any constitutional violations created by the then-mandatory Guidelines, however, the Supreme Court in *Booker* severed and excised the appellate-review provision of the Sentencing Reform Act of 1984 ("SRA"), 18 U.S.C. § 3742(e).  *Booker*, 125 S. Ct. at 756-57.  Having severed and excised the SRA's standards governing review of sentences, the Supreme Court replaced them with "a practical standard of review already familiar to appellate courts:  review for 'unreasonable [ness].'"  *Id.* at 765 (quoting subsection 3742(e)(3)).  Therefore, when a defendant challenges a district court's sentencing determination, we are instructed to determine "whether [the] sentence is unreasonable."  *Id.* at 766.

As the Second Circuit recently noted, "review for 'reasonableness' is not limited to consideration of the length of the sentence."  *Crosby*, 397 F.3d at 114.  Instead, we read *Booker* as instructing appellate courts in determining reasonableness to consider not only the length of the sentence but also the factors evaluated and the procedures employed by the district court in reaching its sentencing determination.  Thus, we may conclude that a sentence is unreasonable when the district judge fails to "consider" the applicable Guidelines range or neglects to "consider" the other factors listed in 18 U.S.C. § 3553(a),[5] and instead simply selects what the judge deems an appropriate sentence without such required consideration.  *Booker*, 125 S. Ct. at 757 (noting that a sentencing court is "require[d] . . . to consider Guidelines ranges" but may "tailor the sentence in light of other statutory concerns as well, see § 3553(a)").  We decline, however, to define rigidly at this time either the meaning of reasonableness or the procedures that a district judge must employ in sentencing post-*Booker*.  Instead we believe it prudent to permit a clarification of these concepts to evolve on a case-by-case basis at both the district court and appellate levels.  Any specific clarification of the reasonableness standard is also unnecessary in this case, as we conclude that there is nothing in the record which suggests that the district court's sentencing determination was unreasonable.

---

[5]Section 3553(a) indicates that "in addition to the advisory [G]uideline range, a sentencing court must consider 'the nature and circumstances of the offense and the history and characteristics of the defendant' as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training and medical care."  *United States v. Ameline*, --- F.3d ---, 2005 WL 350811, at *7 (9th Cir. Feb. 9, 2005) (quoting 18 U.S.C. § 3553(a)), *reh'g granted*, --- F.3d ---, 2005 WL 612710 (9th Cir. Mar. 11, 2005).

The district court in reaching its sentencing determination properly calculated and considered the appropriate Guidelines range.[6]   *See* § 3553(a)(4).  The district court did not miscalculate the appropriate Guidelines range by applying an enhancement pursuant U.S.S.G. § 2K2.1(b)(4).  Despite Webb's assertions to the contrary, a § 2K2.1(b)(4) enhancement may be properly considered even absent evidence that the defendant knew the machine gun was stolen.  Section 2K2.1(b)(4) instructs the district court to apply a two-level sentence enhancement "[i]f [the] firearm was stolen, or had an altered or obliterated serial number."  Application Note 19 of this Guideline explicitly instructs that "[t]he enhancement under subsection (b)(4) for a stolen firearm or a firearm with an altered or obliterated serial number applies whether or not the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number."  U.S.S.G. § 2K2.1, cmt. n.19 (2002).  Given this clear language, the district court did not miscalculate the appropriate Guidelines range in considering a § 2K2.1(b)(4) enhancement.[7]

Additionally, the district court properly considered several other pertinent § 3553(a) factors in reaching its sentencing determination.  Understandably, the district judge was troubled by Webb's lengthy criminal history, which included convictions for, inter alia: felony possession of a firearm, possession of LSD with the intent to distribute, armed robbery, and malicious wounding.  J.A. at 75-88 (Presentence Report ("PSR") at 9-22).  Furthermore, at the time Webb committed the instant offense he was on supervised release from a prior conviction and there was a parole violation warrant outstanding against him for absconding.  J.A. at 88 (PSR at 22).  Given Webb's prior convictions and his parole status, it was reasonable for the district court to place substantial weight on Webb's criminal history in reaching its sentencing determination.  *See* J.A. at 50, 61 (Tr. of Sentencing Hr'g at 5, 16) (indicating that the judge considered but rejected an upward departure and ultimately gave Webb the maximum sentence permitted under the Guidelines range based on Webb's "extensive" criminal history); 18 U.S.C. § 3553(a)(1)-(2) ("The court, in determining the particular sentence to be imposed, shall consider . . . the nature and circumstances of the offense and the history and characteristics of the defendant" along with "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the defendant.").

The district court also took into account additional characteristics of Webb in crafting the appropriate sentence.  *See* § 3553(a)(1)-(2).  The PSR indicates that Webb had received little formal education and that he had suffered from various substance abuse problems in the past.  As a result, the district court recommended that while in prison Webb participate in a drug treatment program and "the Bureau of Prisons' education program working towards completion of his GED."  J.A. at 62 (Tr. of Sentencing Hr'g at 17); *see also* § 3553(a)(2)(D) ("The court, in determining the particular sentence to be imposed, shall consider . . . the need for the sentence imposed . . .to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.").  Thus, the record indicates that at sentencing the district judge was concerned not only with ensuring that the imposed sentence protects public safety, *see* 18 U.S.C. § 3553(a)(2)(C), but also that it meets Webb's needs, *see* 18 U.S.C. § 3553(a)(2)(D).

---

[6] Although we hold that the district court properly calculated the appropriate Guidelines range in this case, we decline to address whether a district judge must always calculate the precise appropriate Guidelines range in order to comply with *Booker*. *See Crosby*, 397 F.3d at 112 (indicating that "precise calculation of the applicable Guidelines range may not be necessary" in certain situations where the district judge imposes a non-Guidelines sentence).

[7] Webb alternately argues that U.S.S.G. § 2K2.1(b)(4) violates due process because it lacks a mens rea requirement.  In *United States v. Murphy*, 96 F.3d 846 (6th Cir. 1996), we considered and rejected this argument. *Id.* at 849 (noting that "[a] statute may provide criminal liability without *mens rea* consistent with due process if it is a regulatory measure in the interest of public safety") (internal quotation marks and citation omitted).

Finally, there is no evidence in the record that the district judge acted unreasonably by, for example, selecting the sentence arbitrarily,[8] basing the sentence on impermissible factors, failing to consider pertinent § 3553(a) factors, or giving an unreasonable amount of weight to any pertinent factor.[9] Instead the record indicates that the district judge carefully reviewed and weighed all the relevant information provided by Webb, the government, and the probation office before arriving at Webb's sentence. As a result, we find nothing in the record that indicates that Webb's sentence is an unreasonable one with regard to the length, the factors considered, or the procedures employed by the district court in arriving at Webb's sentence.[10]

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

---

[8]Post-*Booker* we continue to expect district judges to provide a reasoned explanation for their sentencing decisions in order to facilitate appellate review. *See* 18 U.S.C. § 3553(c).

[9]While we decline to indicate what weight the district courts must give to the appropriate Guidelines range, or any other § 3553(a) factor, we also decline to hold that a sentence within a proper Guidelines range is per-se reasonable. Such a per-se test is not only inconsistent with the meaning of "reasonableness," *see Crosby*, 397 F.3d at 115 (noting that reasonableness is "a concept of flexible meaning, generally lacking precise boundaries"), but is also inconsistent with the Supreme Court's decision in *Booker*, as such a standard "would effectively re-institute mandatory adherence to the Guidelines." *Crosby*, 397 F.3d at 115.

[10]We do not hold that the procedure followed by the district court in sentencing Webb would be reasonable in every case. Certainly there will be cases in which further procedures are required, particularly now that district judges, unlike the district judge in this case, have more discretion under *Booker* to determine the proper sentence.

---

## **CONCURRING IN PART, DISSENTING IN PART**

---

KENNEDY, Circuit Judge, concurring in part and dissenting in part. I concur in the panel's opinion with the exception of footnote nine. We are not called upon to decide whether sentences within the Guidelines are per-se reasonable to affirm the sentence in this case. On that ground alone, I would decline to address the issue raised in the footnote. Because the majority addresses the issue, however, I feel compelled to address it as well.

First, I question whether a sentence within the Guidelines' range can ever be anything other than reasonable in light of the Sentencing Commission's congressionally mandated mission to develop appropriate sentences based on all factors related to the conviction. 28 U.S.C. §§ 991(b), 994. As I understand the Commission's approach to establishing Guidelines, it initially considered the sentences imposed by district courts throughout the United States for particular crimes, the factors that judges had considered in imposing those sentences, as well as its congressional mandate, and then sought to set the Guidelines accordingly. It selected factors such as amounts of drugs, amounts of money or losses, etc. While other approaches or amounts may be reasonable as well, it is hard to conclude that the amounts or factors the Commission selected were not reasonable.

Nor, do I agree with the last sentence of footnote nine, which indicates that holding all sentences within the Guidelines' range per-se reasonable would effectively make the Guidelines mandatory. If this court were to hold that a sentence within the Guidelines' range is per-se reasonable, it does not follow that a sentence outside the Guidelines' range is per-se unreasonable, a necessary prerequisite to making the Guidelines effectively mandatory. Hypothetically, a sentence within the Guidelines' range could be just as reasonable as a sentence outside the Guidelines' range. Thus, even if this court were to hold that a sentence within the Guidelines' range is per-se reasonable, the voluntariness of the Guidelines would still be maintained provided that the court did not also hold that sentences outside the Guidelines' range are per-se unreasonable.