NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0324n.06
Filed: May 9, 2006

No. 05-4232

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| THOMAS RAY COFFEE. | ) | DISTRICT OF OHIO |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |
| _____ | ) | |

**Before: MOORE and GIBBONS, Circuit Judges, and SHADUR,** [*] **District Judge.**

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Thomas Ray Coffee

("Coffee") appeals from the sentence imposed by the district court following his guilty plea to a

charge of conspiracy to commit wire and mail fraud. For the reasons discussed below, we **AFFIRM**

the judgment of the district court.

## I. BACKGROUND

In June 1999, Thomas Coffee was arrested on the basis of a warrant stating that "[t]he

defendant, acting as The Centerville Marketing Group, a/k/a 'Centerville Marketing' ('TCMG'),

participated in a scheme in which TCMG fraudulently sold to private companies substandard,

untested, and/or counterfeit aircraft parts, which had both military and civilian applications." Joint

---

[*]The Honorable Milton Shadur, United States District Judge for the Northern District of
Illinois, sitting by designation.

Appendix ("J.A.") at 4 (Warrant for Arrest). After a short period of detention, Coffee was released from custody on an appearance bond with conditions.[1] On July 8, 1999, Coffee was indicted by a federal grand jury for mail fraud, wire fraud, conspiracy, trafficking in counterfeit goods, and aiding and abetting these offenses.[2] Coffee pleaded guilty to one count of conspiracy to commit wire fraud and mail fraud[3] pursuant to a plea agreement in August 2002. In the years between the indictment and the plea agreement, Coffee's bond was modified to allow him to travel for both business and personal reasons and to report to pretrial services less frequently.

The sentencing proceedings in this case spanned the course of several years; the district court held four different sessions of sentencing hearings that were delayed by numerous postponements. During these years, Coffee remained under pretrial supervision. On August 11, 2005, the district court sentenced Coffee to twelve months of incarceration, a $100 special assessment, $2800 in restitution, and three years of supervised release. Coffee timely appealed this sentence.

## II. ANALYSIS

On appeal, Coffee argues that the three-year term of supervised release is unreasonable in light of the fact that he had already served several years of pretrial supervision without incident.

---

[1]The conditions of Coffee's release included restrictions on travel, reporting requirements, surrender of his passport, and "to have no association with the area of aircraft and/or aviation parts." J.A. at 23-24 (Order Setting Conditions of Release).

[2]The case was transferred from the Eastern District of Pennsylvania to the Southern District of Ohio in September 2000.

[3]Coffee pleaded guilty to violating 18 U.S.C. § 371, which states:
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

"[W]hen a defendant challenges a district court's sentencing determination, we are instructed to determine 'whether [the] sentence is unreasonable.'" *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) (quoting *United States v. Booker*, 543 U.S. 220, 261 (2005)), *cert. denied*, 126 S. Ct. 1110 (2006). "[W]e may conclude that a sentence is unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Id.* (quoting *Booker*, 543 U.S. at 245-46) (footnote omitted).

A court is permitted to impose a term of up to three years of supervised release as a part of a sentence for a Class C or D felony. 18 U.S.C. § 3583(a)-(b). The Guidelines provisions regarding supervised release state as follows:

> (a) The court shall order a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is imposed, or when required by statute.
> (b) The court may order a term of supervised release to follow imprisonment in any other case.

U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 5D1.1. Guideline § 5D1.2 sets forth the appropriate length of the supervised release term:

> (a) Except as provided in subsections (b) and (c), if a term of supervised release is ordered, the length of the term shall be: . . .
> (2) At least two years but not more than three years for a defendant convicted of a Class C or D felony.

Because Coffee pleaded guilty to a Class D felony[4] and the district court chose to impose a term of supervised release, the three-year term was within the advisory Guidelines range. Thus, this

---

[4]Felonies punishable by "less than ten years but five or more years" of imprisonment are Class D felonies. 18 U.S.C. § 3559(a)(4). Because the maximum term of imprisonment authorized by 18 U.S.C. § 371 is five years, it meets the minimum requirements of a Class D felony.

sentence must be credited "with a rebuttable presumption of reasonableness." *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). However, "[t]his rebuttable presumption does not relieve the sentencing court of its obligation to explain to the parties and the reviewing court its reasons for imposing a particular sentence." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006).

In analyzing Coffee's claim that he has been sentenced to a total term of supervision spanning approximately nine years, we first note the distinct purposes of pretrial supervision and supervised release. Pretrial supervision is designed to restrict an individual only to the extent necessary to ensure that he or she will not endanger others and will comply with court orders. The relevant statutory provisions require release "subject to the least restrictive further condition, or combination of conditions, that [the] judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). Section 3142(j) states that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." Supervised release, by contrast, is intended "'to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release.'"[5] *United States v. Johnson*, 529 U.S. 53, 59 (2000) (quoting S. REP. NO. 98-225, at

---

[5]The Sentencing Guidelines state that a court is free to impose conditions of supervised release "to the extent that such conditions (1) [a]re reasonably related to . . . (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . ." U.S.S.G. § 5D1.3(b).

4

124 (1983)).[6] Given this difference, the length of the pretrial supervision period should have no independent bearing on the reasonableness of the supervised release term.[7]

This still leaves the question of whether the three-year term of supervised release was itself reasonable. Section 3583(c) states that "[t]he court, . . . in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."[8] At sentencing, the district court discussed the § 3553(a) factors as well as the arguments raised by Coffee. As support for his unreasonableness claim, Coffee points out that he had "only two prior contacts with law

_____

[6]*Johnson* overruled a Sixth Circuit opinion holding that excess prison time served by a defendant could be credited against the defendant's subsequent term of supervised release. *Id.* at 55-56. The Supreme Court explained that this court's holding was contrary to both the language and the purpose of 18 U.S.C. § 3624(e), which states that "[t]he term of supervised release commences on the day the person is released from imprisonment." *Id.* at 56-60. The Court stated that an individual cannot be "released" while still imprisoned. *Id.* at 57. In addition, "[t]he [rehabilitative] objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release." *Id.* at 59.

[7]However, Coffee's behavior during the period of pretrial supervision can be considered as it relates to factors such as deterrence or rehabilitation.

[8]These factors are:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
(5) any pertinent policy statement . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a).

enforcement, both relating to his participation in the aircraft parts industry." Appellant Br. at 11. However, the district court noted that Coffee's offense was "[f]ar more serious . . . than the typical wire and mail fraud where a bank is defrauded of nothing but money," given the risk that one of the aircraft parts could have failed. J.A. at 157 (Tr. at 49). In addition, the district court emphasized the fact that when Coffee was sentenced for his one prior conviction in 1996,[9] "he swore off any further criminal activity" while he "in effect was in the process of committing this offense."[10] J.A. at 157 (Tr. at 49). The district court stated that a harsher punishment than was imposed in Coffee's first conviction[11] was necessary for purposes of deterrence. Coffee also points out that he was "not . . . charged with any additional criminal conduct" during the length of his pretrial supervision; in addition, "his reporting requirement, during the six year term of supervision, has been periodically reduced at the request of the United States Pretrial Services office." Appellant Br. at 11. However, the district court was aware of Coffee's pretrial supervision term and apparently believed that a term of supervised release was still necessary.[12] J.A. at 158 (Tr. at 50). The district court considered

---

[9]Coffee was prosecuted for mail fraud in federal district court in Missouri.

[10]The district court explained:
[B]ased on the stipulated facts agreed to at the plea proceeding at the same time [Coffee] appeared before Judge Bartlett on December 12th of 1996 and proclaimed himself sorry and determined to lead a blameless life from that point on, at that very moment he was engaged in the criminal conduct which formed the basis of this case and continued that criminal conduct up through and including June 14th of 1999.
J.A. at 154-55 (Tr. at 46-47).

[11]Coffee was sentenced to one month of imprisonment and three years of supervised release.

[12]The district court stated:
I don't know whether at this stage of his life this defendant is a risk to commit similar offenses, but I would indicate that at least for the time that he is in prison, because in truth that is where he is headed and for the period of supervised release, we can guarantee that the public safety will not be compromised by this defendant in a manner similar to that which he has done on at least two occasions.

6

rehabilitation, stating, "I don't know whether rehabilitation truthfully is an issue here except the extent to which Mr. Coffee might finally be made to realize that this kind of criminal conduct is not condoned by society." J.A. at 159 (Tr. at 51). With regard to sentencing disparity, the district court judge remarked, "I can assure the record no person so situated has received a sentence of less than this defendant."[13] J.A. at 160 (Tr. at 52).

In reviewing the sentencing transcript, we believe that it is clear that the district court did not fail to consider the relevant factors or "simply select[] what the judge deem[ed] an appropriate sentence without [the] required consideration." *Webb*, 403 F.3d at 383. Because the district court properly articulated its reasoning in the proceedings below, we affirm Coffee's sentence.

### III. CONCLUSION

For the reasons discussed above, we **AFFIRM** the judgment of the district court.

---

J.A. at 158 (Tr. at 50).

[13]Coffee raised a few additional arguments as support for his position that the term of supervised release is unreasonable. First, he explained that he "is currently disabled and suffers from a number of physical and psychological problems." Appellant Br. at 11. The district court addressed this concern with regard to the term of imprisonment, concluding that Coffee's problems "can be more than adequately treated within the federal prison system." J.A. at 152 (Tr. at 44). Coffee also argued that his sons and wife are close to completing their terms of supervised release or had the supervision terminated, and that "the $100 Special Assessment and all restitution were paid prior to the time of sentencing." Appellant Br. at 11. We do not believe that these facts show that the three-year term of supervised release is unreasonable.