NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0528n.06
Filed: July 28, 2006

No. 05-5501

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JAMES CHRISTOPHER WALKER, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: BATCHELDER and GRIFFIN, Circuit Judges; ZATKOFF, District Judge.[*]

ZATKOFF, District Judge.  James Christopher Walker entered a plea of guilty to bank robbery by force and violence on May 27, 2004, in the Eastern District of Tennessee.  On March 17, 2005, Walker was sentenced to 208 months incarceration.  Walker now appeals his sentence and asserts that it was unreasonable in light of the decision in *United States v. Booker*, 543 U.S. 220 (2005).  Because the district court reasonably sentenced Walker, we affirm.

**I.**

As set forth in the Rule 11 Plea Agreement in this case, the parties agree that on December

---

[*] The Honorable Lawrence P. Zatkoff, District Judge for the Eastern District of Michigan, sitting by designation.

29, 2003, Walker entered the United Community Bank located at 211 Gill Street, Alcoa, Tennessee, wearing a blue "Cowboys" jacket. Walker approached a teller, pointed a handgun (which turned out to be a BB gun) at her and demanded that she give him the money from her teller drawer. The teller complied and handed Walker approximately $1,828.00 in U.S. currency, bait money and a red dye pack. Walker fled the bank in a vehicle. Shortly thereafter, the dye pack exploded resulting in red dye stains on Walker's hands and clothing, the U.S. currency and the inside of the vehicle. At the time of the offense, the deposits of the United Community Bank were insured by the FDIC.

On January 6, 2004, Walker was charged in a one-count indictment with armed bank robbery. On June 14, 2004, Walker pleaded guilty pursuant to the Rule 11 Agreement. A presentence investigation report ("PSR") was prepared and disclosed to the parties on August 11, 2004. After sentencing was continued pending the U.S. Supreme Court's resolution of the *Booker* case, the PSR was revised on March 17, 2005.

The PSR documented Walker's criminal background, including seven aggravated robberies in Blount County, Tennessee, the locale of the offense in this case. In each of those robberies, Walker robbed a business at gun point or acted in such a manner that the employee believed that Walker had a gun. An eighth robbery conviction did not include the use of a gun. At the time of the offense in the instant case, Walker was on parole for one or more of the prior offenses and violated the same by committing this offense. In addition, the prior convictions caused Walker to be considered a career offender under §4B1.1 of the U.S. Sentencing Guidelines and placed him in criminal history category VI. Walker's Total Offense Level was 31. Accordingly, the undisputed applicable Guideline range was 188 to 235 months.

Neither party filed objections to the PSR. Walker filed a Sentencing Memorandum on March 15, 2005, wherein he argued that the guideline range was "way too high" because he must finish serving his state sentence(s) for violating his parole before commencing his federal sentence. Walker attributed his criminal history to his upbringing, which included a father who regularly beat him, a mother who suffered from severe mental illness, and his own drug and alcohol addictions. Walker stated that he would like to take advantage of drug treatment programs and vocational training opportunities while incarcerated. Walker argued a reasonable sentence would be one below the Guideline range called for in the PSR.

At the sentencing hearing, the district court first established that neither party had any objection to the PSR. The government asked for a sentence in the middle of the Guideline range, noting that (1) the victim in the case was pregnant woman who was already experiencing a difficult pregnancy when Walker approached her at gun point, and (2) all of Walker's prior convictions were for violent offenses. The Government also argued that the decisions to be made by the State of Tennessee with respect to Walker's parole status were irrelevant to the sentence to be imposed by the federal court for the instant offense. Walker presented an extended statement wherein he reiterated the themes set forth in his Sentencing Memorandum (as described in the immediately preceding paragraph).

After hearing the parties' arguments, the district judge recessed to fully consider the arguments and Walker's statements. Upon returning to the courtroom, the district judge stated:

> Mr. Walker, your attorney [Mr. Tollison] certainly argued
> passionately and well on your behalf and the Court also appreciates
> the comments and statements you have made and certainly, I think as

Mr. Tollison said, no one wants to give up on you, but also given not only the circumstances, the violent circumstances of this crime, but also, you know, the whole Presentence Report its total, obviously your history as [AUSA] Plowell put it, a series of mistakes but mistakes involving violence in most instances or a lot of the instances violent gun crimes. When we look at the factors, not only just the advisory guideline range, which is one of the factors, but the factors in section 3553, quite frankly, they in the Court's opinion weigh heavily against you in terms of the nature and circumstances of the offense, among other things, just to point out some of them; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and provide just punishment for the offense, to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and then the kind of sentences in the sentence range established for this offense[,] i.e., the sentencing guidelines which does give us an advisory guideline range of a lengthy period of time.

The Court, you know, believes taking those factors as a whole that it is appropriate to give you a sentence within the advisory guideline range in this instance. I have also reflected upon the request to run, I guess ultimately to run your sentence concurrently in part based on matters you are facing at the state level. I guess the problem we have is[,] I know while Mr. Tollison's sentencing memorandum talked about a date far in the future as to what might be the effect of your parole violation at the state level, we really don't know what is going to happen. Somebody can argue otherwise, if they want, but I mean, you could serve the entire length of your state sentence, or the state could decide, or you could go back and argue with your state attorneys and the ultimate outcome would be to parole you to the federal detainer and cut off your state sentence in some fashion.

. . . I think the bottom line here is the Court[,] after reflecting on that at some length[,] believes that at least it should not interfere with what is going on between you and the state. And you need to, you need to go back and make your case to the state as to what the effect will be of your violation of parole in this case because it is a significant – not only is your instant offense significant, but it is significant, obviously, that it was committed while you were on parole not from the same offense but similar types of violent offenses at the state level. With that in mind, we'll go forward with sentencing at this time.

The Court has considered the nature and circumstances of the offense, the history and characteristics of the defendant and the

4

advisory guidelines range as well as the other factors listed in 18 United States Code §3553(a).

The district court then sentenced Walker to a term of imprisonment of 208 months, which term of imprisonment was to run consecutive to any sentences imposed by any state court(s), five years supervised release and a $100 special assessment.

## II.

This Court must affirm a defendant's sentence if it is "reasonable." *United States v. Christopher*, 415 F.3d 590, 594 (6th Cir. 2005). A sentence properly calculated under the United States Sentencing Guidelines is entitled to a rebuttable presumption of reasonableness. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006) (noting that "[s]uch a presumption comports with the Supreme Court's remedial decision in" *Booker*).

## III.

Walker argues that the post-*Booker* cases have established that reasonableness applies not only to the sentences imposed, but also to the process used by the district judge to arrive at the sentence. *United States v. Webb*, 403 F.3d 373 (6th Cir. 2005). Walker contends that the district judge in this case did not adequately address the non-Guideline factors listed in § 3553(a) because the judge did not "state how each of [those] factors was applied."

This Court has squarely addressed and rejected Walker's argument in a number of cases, all of which were encapsulated in the *Williams* decision (which was decided after the parties' had filed their briefs in this case). "Although the district court may not have mentioned all of the [§ 3553(a)]

5

factors . . . explicitly, and although explicit mention of those factors may facilitate review, this court has never required the 'ritual incantation' of the [§3553(a) ] factors to affirm a sentence." *Williams*, 436 F.3d at 708-09 (quoting *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005)). "The court need not recite these factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *Williams*, 436 F.3d at 709 (quoting *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005)).

The district judge in this case considered the §3553(a) factors and articulated his reasoning for the imposed sentence, as evidenced by the quoted language set forth in Section I above. In doing so, the district judge articulated his "reasoning sufficiently to permit reasonable appellate review, specifying [his] reasons for selecting a sentence in the middle of the Guidelines range." *Williams*, 436 F.3d at 709. Walker's sentence is entitled to a rebuttable presumption of reasonableness because his sentence is within the applicable Guideline range. *Id.* at 708.

Walker next argues that the sentence itself was unreasonably excessive under the factors set forth in § 3553(a), particularly because the sentence ran consecutively to the sentence(s) to be imposed by the state court(s) as a result of his parole violations. The Court notes that the imposition of a consecutive sentence in this case is consistent with §5.G1.3(c) of the Guidelines.[1] Moreover, Walker's arguments before this Court are the same asserted before the district court in his

---

[1]The Application Notes for §5.G1.3(c) state: "Subsection (c) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked. Consistent with the policy set forth in Application Note 4 and subsection (f) of §7B1.3 (Revocation of Probation or Supervised Release), the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation."

Sentencing Memorandum and at his sentencing. Accordingly, because "the record indicates that the district judge carefully reviewed and weighed all the relevant information provided by [Walker], the government, and the probation office before arriving at [Walker's] sentence . . . , we find nothing in the record that indicates that [Walker's] sentence is an unreasonable one. . . ." *Webb*, 403 F.3d at 385.

## IV.

As Walker has failed to show that the district court imposed an unreasonable sentence, we affirm.