NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0521n.06

No. 17-5864

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERCA, | ) | **FILED** |
| | ) | Oct 19, 2018 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DAEQUON CHARLES DAVIS, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: CLAY and GRIFFIN, Circuit Judges; ZOUHARY, District Judge.[*]

ZOUHARY, District Judge.

Defendant-Appellant Daequon Charles Davis appeals his conviction and sentence. The Government moves to dismiss the appeal, arguing Davis entered a valid plea agreement that waived his right to appeal.

BACKGROUND

In the fall of 2013, members of the Johnson City Police Department and the Federal Bureau of Investigation launched a joint investigation into a suspected drug-trafficking ring in the Eastern District of Tennessee. As part of this investigation, numerous confidential informants were developed and utilized to conduct controlled drug buys with suspected members of the drug ring. Three of these controlled buys involved Davis.

---

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

After the third controlled buy, law enforcement confronted Davis and expressed interest in speaking with him. Davis consented to an interview, where he confessed to his involvement in the crack-cocaine conspiracy underlying his current conviction. He then allowed law enforcement to search his apartment. During the search, law enforcement uncovered $4,140 in a drawer along with approximately 45 grams of crack cocaine. Based on Davis' confession, the three controlled buys, and statements of cooperators and coconspirators, law enforcement estimated that Davis was personally responsible for distributing at least 9,000 grams of crack cocaine, with drug proceeds of about $212,000.

In November 2015, a grand jury returned an eleven-count indictment against Davis and three co-defendants: Hayward Dargan, Jr., Lamont Darnell Fortune, and Charles Lee Loftly. Count One of the indictment charged the co-defendants with conspiring to distribute, and possessing with the intent to distribute, 280 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Counts Nine, Ten, and Eleven charged Davis with distributing 28 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

Davis subsequently entered into a written plea agreement. In exchange for his guilty plea to the conspiracy charge, the Government agreed to dismiss the remaining counts against him and to seek an increased sentence based on only one prior drug conviction, rather than three. Davis stipulated to facts concerning the three controlled buys, his confession, and the search of his apartment. The parties agreed that, given Davis' prior felony drug conviction, he faced a mandatory minimum sentence of twenty years and a maximum sentence of life. For purposes of sentencing, Davis also admitted he was personally accountable for at least 2.8 kilograms, but less than 8.4 kilograms, of crack cocaine. The plea agreement included a waiver provision in which Davis agreed not to file a direct appeal of his conviction or sentence. However, he retained the

limited "right to appeal a sentence imposed above the sentencing guidelines range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater." Finally, Davis agreed not to file any 28 U.S.C. § 2255 motion or other collateral attack on his conviction or sentence, unless based on claims of ineffective assistance of counsel or prosecutorial misconduct.

In January 2017, the district court held a change-of-plea hearing and accepted Davis' guilty plea. During the hearing, the parties withdrew a prior signed plea agreement before introducing their final signed agreement. The district court then placed Davis under oath and confirmed he was competent, wished to enter a guilty plea, and understood the constitutional rights he was waiving by pleading guilty. The district court also reviewed Davis' understanding of the charge against him, the factual basis for that charge, and the possible sentence and other consequences he faced as a result. These consequences included, under the parties' plea agreement, a waiver of his appellate rights. Davis raised no objections to, or concerns about, the plea agreement.

A presentence report (PSR) was prepared. Based on the amount of crack cocaine agreed to by the parties, the PSR assigned a base-offense level of 34 under USSG § 2D1.1(a)(5). Because Davis had "at least two prior felony convictions of either a crime of violence or a controlled substance offense," the PSR found he was a career offender under USSG § 4B1.1(b), with an offense level of 37. After a three-level reduction for acceptance of responsibility, *see* USSG § 3E1.1(a), (b), Davis' total offense level became 34. That offense level, coupled with a criminal history category of VI due to his career offender status, yielded a Guidelines range of 262 to 327 months. Defense counsel filed several objections to the PSR, including to the career offender classification and the resulting criminal history category of VI, but the objections were overruled.

At sentencing, the Government requested a bottom-of-the-Guidelines sentence of 262 months. Defense counsel agreed, but also pointed to facts that might justify a downward departure. Davis was then given an opportunity to address the district court. During this conversation, he raised concerns about two prior convictions noted in the PSR, one from Connecticut and the other from Tennessee. The district court confirmed during the hearing, with the appropriate state court, that the Connecticut conviction was indeed correct, and stated it "wo[uld]n't even consider" the Tennessee conviction. The district court and defense counsel also explained to Davis that these prior convictions had no impact on his Guidelines range due to his career offender status based on other prior convictions. Finally, Davis raised concerns about language included in the original, withdrawn plea agreement. His counsel confirmed that this language was not in the final plea agreement.

After addressing Davis' concerns, the district court sentenced him to 262 months of imprisonment, followed by a supervised-release term of ten years. A forfeiture order for $212,000 was also entered.

## DISCUSSION

Davis challenges the validity of his guilty plea, arguing the plea was not knowing and voluntary because he exhibited reluctance to enter the plea and "in one instance . . . expresse[d] confusion as to what he pled guilty to." He further contends that his sentence is unconstitutional because the Government's case "lack[ed] credibility" and was "a tall-tale designed to skirt" the Fair Sentencing Act (FSA) requirements.[1] The Government responds that Davis waived his right to challenge his conviction and sentence through a valid plea agreement. Further, even if he had

---

[1] Davis also raised an ineffective assistance of counsel claim in his opening brief, but he subsequently withdrew that challenge.

not, the Government argues Davis' challenge to his sentence is meritless because he admitted to conspiring to distribute, and personally distributing, more than the minimum drug quantities under the FSA.

"We apply *de novo* review to the issue of whether a criminal defendant has waived appellate rights in a valid plea agreement." *United States v. Detloff*, 794 F.3d 588, 592 (6th Cir. 2015). The law is "well settled" that a "[c]riminal defendant[] may waive [his] right to appeal as part of a plea agreement so long as the waiver is made knowingly and voluntarily." *United States v. Beals*, 698 F.3d 248, 255 (6th Cir. 2012) (citation omitted). When a defendant does so, "[o]nly challenges to the validity of the waiver itself will be entertained on appeal." *United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012).

A guilty plea is valid if entered knowingly, voluntarily, and intelligently. *Bousley v. United States*, 523 U.S. 614, 618 (1998). Federal Rule of Criminal Procedure 11 "is meant to ensure that the district court is satisfied that the defendant's plea is knowing, voluntary, and intelligent." *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). Under Rule 11, the district court must verify that the defendant is pleading voluntarily and that he "understands his . . . applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that [he] committed the crime charged." *Id.* at 378–79. Because Davis did not object to a Rule 11 violation at the change-of-plea hearing, we review his guilty plea for plain error. *United States v. Vonn*, 535 U.S. 55, 59 (2002). To succeed, Davis must show an error occurred and there is a reasonable probability that, but for the error, he would not have entered the plea. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

Davis does not identify any specific Rule 11 provision that the district failed to comply with, and review of the record confirms no error. This includes Rule 11(b)(1)(N), which provides

that a district court must inform the defendant about, and make sure the defendant understands, "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Although Davis asserts that he lacked "the voluntariness required for an acceptable plea agreement" because he "exhibited more than a 'second thought' or 'frustration' with the consequences of pleading guilty," this assertion is unsupported. Notably, Davis fails to identify any portion of the plea colloquy supporting his position. Upon independent review, the only conceivable "reluctance" Davis displayed was in response to the district court's question as to whether he was "plead[ing] guilty because [he is] in fact guilty." Davis initially responded "[n]o and yes." But the district court repeated, "Are you guilty or not?" And Davis responded, "Yes, your Honor." This exchange does not provide a basis to conclude the district court erred in accepting the guilty plea, much less committed plain error. *See United States v. Simpson*, 81 F. App'x 524, 525–27 (6th Cir. 2003) (holding that a guilty plea was knowing and voluntary despite some "ambivalence" by the defendant).

The other instances of "confusion" Davis identifies occurred during the sentencing hearing, long after the guilty plea was accepted. As discussed, Davis contested two prior convictions included in the PSR, but these convictions were not used to enhance his sentence and had no bearing on his Guidelines range. Davis also raised concern about a statement in the withdrawn plea agreement, but this statement was removed from the final agreement. The record does not demonstrate that Davis was "confus[ed] as to what he pled guilty to and didn't sufficiently understand what was going on." He did not contest any of the facts concerning the crack-cocaine conspiracy, including the drug quantity involved. Nor did he suggest he desired to withdraw his guilty plea. In fact, while discussing these concerns, Davis stated, "I'm here to stand up and take

responsibility for what I did." In short, there is no basis to conclude that the plea was not knowing and voluntary. Davis is therefore barred from appealing his conviction.

The terms of the plea agreement also bar Davis from appealing his sentence. He agreed not to appeal his conviction *or* sentence unless he received a sentence above the Guidelines range "determined by the Court" or the mandatory minimum "deemed applicable by the Court, whichever is greater." "Plea agreements are to be enforced according to their terms." *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). Davis received a Guidelines sentence, and he makes no argument that his current challenge is excluded from the waiver provision. He waived his opportunity to contest the drug quantity involved in this case when he knowingly stipulated to the quantity in the plea agreement and waived his right to appeal.

Finally, nothing in the record supports Davis' assertion that the district court "ha[d] reservation[s] about the credibility of the amounts of drugs alleged to have been sold." While the district court declined to impose a fine because Davis did not "have the ability to pay," it entered a forfeiture order for $212,000—the estimated drug proceeds for 9,000 grams of crack cocaine.

For these reasons, this appeal is dismissed.