NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0185n.06

No. 24-3494

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Apr 03, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| MARQUIS T. HENSON, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: MOORE, GIBBONS, and MURPHY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Marquis Henson pleaded guilty to one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) after he sold a revolver to an undercover federal agent. Despite having pleaded guilty pursuant to a plea agreement, Henson indicated at his change of plea hearing that he was dissatisfied with the assistance of defense counsel and had wished to challenge the constitutionality of § 922(g)(1) as applied to him, but that defense counsel had refused to raise such a challenge. The district court conducted a colloquy with Henson to ensure that he was comfortable proceeding and was entering his guilty plea knowingly, intelligently, and voluntarily, after which it accepted Henson's plea. Henson was sentenced to a within-Guidelines sentence of 18 months of incarceration.

On appeal, Henson argues that his guilty plea was rendered involuntary due to the alleged ineffective assistance of his counsel. And he argues that § 922(g)(1) is unconstitutional as applied to him. But Henson's plea colloquy demonstrates that his guilty plea was knowing, intelligent,

and voluntary, and the factual record is insufficiently developed at this stage to consider Henson's ineffective-assistance claim. In addition, Henson's criminal record demonstrates that he is sufficiently dangerous to come within the category of individuals that Congress may lawfully disarm. For these reasons, we **AFFIRM** Henson's conviction.

## I. FACTUAL BACKGROUND

### A. Henson's Firearm Sale

Investigators with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") began an investigation into criminal conduct in areas of high firearm activity in July 2022. R. 24 (PSR at ¶ 6) (Page ID #165).[1] By July 2023, ATF had identified Marquis Henson as an individual engaging in illicit firearm sales, and a confidential informant began communicating with Henson to coordinate the purchase of a firearm. *Id.* The two arranged to meet at Henson's home on July 10, 2023, whereupon Henson sold an undercover agent accompanying the confidential informant a loaded Rossi revolver in exchange for $300. *Id.* at ¶ 7 (Page ID #166).

### B. The Proceedings Below

A grand jury indicted Henson on one count of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(8). R. 1 (Indictment at 1) (Page ID #1). At the time that he sold the firearm to the undercover agent, Henson had a lengthy criminal record, including a felony conviction in Florida state court for the burglary of an unoccupied conveyance stemming from Henson's theft of a lawnmower from the back of an unoccupied truck. R. 24 (PSR at ¶ 28) (Page ID #169). Henson's criminal record also included convictions, between the years 2009 and 2020,

---

[1]At sentencing, Henson had no objections to the Presentence Investigation Report ("PSR"), and the district court adopted the report in full, including its recitation of the facts of Henson's case. R. 32 (Sent'g Tr. at 4–5) (Page ID #233–34).

for giving false information to police, shoplifting, disorderly conduct, resisting arrest, attempted statutory burglary, theft, and obstructing justice. *Id.* at ¶¶ 23–30 (Page ID #167–70). Most importantly for the purposes of this appeal, Henson's criminal record also included two convictions for assault: a 2017 conviction on two counts of assault in Maryland state court, and a 2014 conviction of simple assault in Washington, DC in which Henson punched another individual in the side of the head and fled. *Id.* at ¶¶ 26–27 (Page ID #168).

After initially entering a plea of not guilty, Henson notified the district court of his intent to change his plea and entered into a plea agreement with the government. R. 18 (Not. of Intent to Change Plea); R. 19 (Plea Agreement). Pursuant to the plea agreement, Henson agreed to "expressly and voluntarily waive[]" his appeal rights with the exception of his right to appeal "any punishment in excess of the statutory maximum" or "any sentence to the extent it exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines" as stipulated in the agreement. R. 19 (Plea Agreement at ¶ 18) (Page ID #77). The plea agreement also preserved Henson's right to pursue "on appeal or collateral attack" any "claims of ineffective assistance of counsel or prosecutorial misconduct." *Id.* Henson initialed each page of the plea agreement, including the page of the agreement stating that Henson had "discussed this case and this plea agreement in detail with [his] attorney," "had sufficient time and opportunity to discuss all aspects of the case in detail with [his] attorney," and was "satisfied with the legal services and advice provided to [him] by [his] attorney." *Id.* at ¶ 26 (Page ID #80). Henson also signed the last page of the agreement, indicating that he had read and understood each provision of the agreement and was entering into the agreement voluntarily. *Id.* at 11 (Page ID #82).

At his change of plea hearing, however, Henson immediately voiced discontent with his counsel. R. 31 (Plea Hr'g Tr. at 6) (Page ID #205). When the district court asked if he was "satisfied with [counsel's] advice to you and representation of you so far," Henson responded, "No, your Honor." *Id.* When asked to elaborate, Henson replied,

> I've been asking him to submit motions. I asked him for my discovery months ago. I mean, when we came to the Court the last time, I know that it was already a case heard I wasn't even present for, Your Honor. And then, you know, I was—just came to court on surprise. This may be my third time seeing him in person. It's just—it's been an ineffective assistance of counsel.

*Id.* Henson also alleged that defense counsel had "said he has a little bit of discovery but he hasn't received the full discovery." *Id.* at 8 (Page ID #207).

The district court then proceeded to question Henson's counsel, who explained that, in addition to speaking with Henson in person on three occasions, he had spoken with Henson on the phone "multiple times" and had engaged in "good discussions." *Id.* at 6, 12 (Page ID #205, 211). Henson agreed that he had conversed with counsel over the phone "[r]ecently about this plea." *Id.* at 8 (Page ID #207). With respect to discovery, counsel stated that he had "gone over his discovery with [Henson]" and that, "for the record, I did go over all the discovery with him" as the case was "not a complex case on discovery." *Id.* at 6, 8 (Page ID #205, 207). Finally, with respect to the constitutional challenge that Henson wished to raise, defense counsel explained that,

> Most importantly, there's a motion that's out there, a *Bruen* motion, that he wanted me to file on his behalf. It did not factually or legally fit the facts in this case. . . . I've advised him as a lawyer and as an officer of the court I will not file a motion that's frivolous, because it does a number of things. It's not valid to the case that we have. . . . I was not going to file that motion because it did not factually—there is no Second Amendment right to carry a gun if you've been convicted in state court.

4

*Id.* at 6–7 (Page ID #205–06). The district court agreed, stating "[r]ight" and "[r]ight. Prohibited by reason of being a felon" to defense counsel's statement that raising a constitutional challenge would have been frivolous. *Id.* at 7 (Page ID #206).

The district court then proceeded, in detail, to question Henson as to whether he was "comfortable with the advice and counsel that . . . your attorney has given to you so far" and whether he "wish[ed] to proceed with the change of plea hearing today." *Id.* at 11 (Page ID #210). Henson affirmed that he was comfortable and that he did wish to proceed. *Id.* The district court confirmed that Henson was aware that he was waiving his right to a jury trial and his other constitutionally guaranteed rights; that he had entered into the plea agreement voluntarily and of his own free will, and that he understood the terms of the agreement; that he understood the statutory penalties and elements of the crime; and that the plea agreement waived most of his appellate rights. *Id.* at 10–22, 24–27 (Page ID #209–21, 223–26). And when the district court asked Henson if he was "prepared to voluntarily change [his] plea knowing, understanding, and agreeing to all of the terms specified on all of the pages" of the plea agreement, Henson confirmed that he was prepared to do so voluntarily and of his own free will. *Id.* at 26–27 (Page ID #225–26). Henson then entered a plea of guilty, which the district court accepted. *Id.* at 27 (Page ID #226).

Following Henson's guilty plea, the case proceeded to sentencing. The Probation Office prepared a Presentence Investigation Report ("PSR") calculating Henson's advisory Guidelines range as 15 to 21 months of imprisonment. R. 24 (PSR at ¶ 60) (Page ID #176). The district court sentenced Henson to a within-Guidelines sentence of 18 months of imprisonment followed by a three-year term of supervised release. R. 32 (Sent'g Tr. at 15–16) (Page ID #244–45); R. 25

5

(Judgment at 2–3) (Page ID #184–85).  Henson appealed.  R. 27 (Notice of Appeal at 1) (Page ID #194).[2]

## II.  DISCUSSION

### A.  Ineffective Assistance of Counsel

Henson's first argument on appeal is that his guilty plea was involuntary because defense counsel was ineffective.  In other words, Henson argues that, because defense counsel failed adequately to investigate his case or pursue potential defenses, Henson agreed to plead guilty without being informed of the strengths and weaknesses of his case.  Henson's assignment of error is an amalgam of two different arguments:  (1) Henson's guilty plea was involuntary, and (2) counsel rendered ineffective assistance.  We address each argument in turn.

#### 1.  Voluntariness of Henson's Plea

Henson argues that he entered into his guilty plea involuntarily because counsel did not inform him of the strengths and weaknesses of his case.  As a general matter, "[w]e review de novo whether a defendant's plea was entered knowingly, voluntarily, and intelligently" and review "'[t]he underlying factual bases relied upon by the district court . . . for clear error.'" *United States v. Catchings*, 708 F.3d 710, 716 (6th Cir. 2013) (quoting *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007)).  However, "[w]hen a defendant fails to object contemporaneously to the district court's alleged failure to comply with the requirements of [Federal Rule of Criminal

---

[2]The government points out that Henson's appeal was untimely because it was mailed on June 3, 2024, 24 days after the district court entered its sentencing judgment on May 10, 2024.  Appellee Br. at 1; *see* R. 25 (Judgment at 1) (Page ID #183), R. 27-1 (NOA Envelope at 1) (Page ID #196); Fed. R. App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days" of the entry of the district court's judgment).  But the government has "waive[d] any objection to the untimely notice of appeal." Appellee Br. at 1.  We may therefore consider this untimely appeal. *United States v. Payton*, 979 F.3d 388, 390 (6th Cir. 2020) (noting that, because the appellate "filing deadline [in a criminal case] is a claims-processing rule, . . . the government can waive an objection to an untimely notice of appeal in a criminal case").

Procedure 11], we review for 'plain error.'" *Id.* (quoting *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005)).  Here, because Henson did not object to the validity of the plea colloquy during his change of plea hearing, we review his legal challenge for plain error.  "Under this review, 'the burden is on the defendant to show that but for the error, he would not have pleaded guilty.'"  *Id.* (quoting *United States v. Martin*, 668 F.3d 787, 791 (6th Cir. 2012)).

"A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant."  *Webb*, 403 F.3d at 378.  We determine whether a defendant entered a plea knowingly, voluntarily, and intelligently "by considering all of the relevant circumstances surrounding" the plea.  *Brady v. United States*, 397 U.S. 742, 749 (1970).  Our inquiry includes determining whether "the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged."  *Webb*, 403 F.3d at 378–79.

Here, the district court conducted a plea colloquy with Henson that was unquestionably adequate.  After Henson expressed dissatisfaction with the assistance of his counsel, the district court immediately paused her line of questioning to interrogate the source of Henson's frustration.  R. 31 (Plea Hr'g Tr. at 6) (Page ID #205).  After questioning Henson and his counsel about their meetings, the sharing of discovery, and their discussions about the case and plea, the district court asked Henson if, despite his frustration with counsel, he still wished to proceed with the hearing.  *Id.* at 11 (Page ID #210).  Henson confirmed that he was comfortable with the advice of counsel and wished to proceed.  *Id.*  The district court then proceeded to inform Henson of each of his constitutional rights and that he would be waiving the majority of these rights by pleading guilty.  *Id.* at 14–17, 24–26 (Page ID #213–16, 223–25).  The district court also reviewed with Henson the

7

elements of the crime with which he was charged, the facts of the case to which he was admitting, and the potential penalties of his guilty plea. *Id.* at 17–24 (Page ID #216–23). After confirming that Henson understood each term of the plea agreement, the district court once again asked Henson if he was "prepared to voluntarily change [his] plea knowing, understanding, and agreeing to all of the terms specified on all of the pages" of the agreement. *Id.* at 26 (Page ID #225). Henson confirmed that he was prepared to do so voluntarily and of his own free will. *Id.* at 26–27 (Page ID #225–26). Only after this lengthy colloquy did the district court accept Henson's guilty plea. *Id.* at 27 (Page ID #226).

Henson nevertheless argues that, despite answering in the affirmative the district court's questions as to whether he was entering a guilty plea knowingly and voluntarily, his guilty plea was involuntary because counsel failed to "properly investigat[e] his case by reviewing discovery or pursuing potential defenses." Appellant Br. at 8. But the district court expressly asked Henson if he was "comfortable with the advice and counsel" and wished to proceed with his guilty plea. R. 31 (Plea Hr'g Tr. at 11) (Page ID #210). And Henson repeatedly affirmed that he was pleading guilty knowingly and voluntarily. *Id.* at 13, 24, 26–27 (Page ID #212, 223, 225–26). The district court did not plainly err in accepting as true Henson's repeated affirmations. We therefore conclude that Henson entered a guilty plea knowingly, intelligently, and of his own volition.

## 2. Ineffective Assistance of Counsel

Having concluded that Henson's guilty plea was validly entered, we turn to his claim that defense counsel rendered ineffective assistance by failing adequately to investigate Henson's case or to pursue certain motions or defenses. We review de novo ineffective assistance-of-counsel

claims, which present mixed questions of law and fact. *United States v. Ferguson*, 669 F.3d 756, 761 (6th Cir. 2012).

As the government notes, and Henson concedes, "[t]he Supreme Court has established that for a criminal defendant in federal custody a motion under 28 U.S.C. § 2255 is generally the preferred mode for raising a claim of ineffective assistance of counsel." *Id.* at 762. This is because, "[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Massaro v. United States*, 538 U.S. 500, 504–05 (2003). As a result, "[o]ur typical approach to ineffective-assistance claims on direct appeal is to decline to address such claims unless 'trial counsel's ineffectiveness is apparent from the record.'" *United States v. Burrell*, 114 F.4th 537, 548 (6th Cir. 2024) (quoting *United States v. Robinson*, 732 F. App'x 405, 414 (6th Cir. 2018)).

We elect to follow our typical approach here. Henson's ineffective-assistance claim is predicated on allegations about his counsel's conduct—i.e., that counsel failed to request all of the necessary discovery from the government, or that he failed to share certain discovery with Henson; that counsel failed otherwise to investigate the case, including investigation into the merits of Henson's desired constitutional challenge; and that counsel did not adequately consult with Henson prior to meeting with him to discuss the plea agreement—that lack factual development. As a result, we are not the appropriate forum for evaluating Henson's claims. We therefore "leave this issue to be decided in the first instance in post-conviction proceedings." *United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005).

9

**B.  As-Applied § 922(g)(1) Challenge**

Henson's second argument on appeal is that § 922(g)(1) is unconstitutional as applied to him.  Specifically, Henson argues that, pursuant to the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), he cannot be constitutionally barred from possessing a firearm because the government has failed to show that he is dangerous, such that his disarmament is inconsistent with our nation's history and tradition.  We conclude that Henson's constitutional challenge lacks merit.

**1.  Waiver**

As a threshold matter, the government argues that Henson waived any challenge to the constitutionality of his sentence because his plea agreement "waived all [Henson's] appeal rights with the exception of those specifically reserved in the agreement."  Appellee Br. at 17.  Specifically, Henson's plea agreement "expressly and voluntarily waives" his rights "to appeal the conviction or sentence in this case . . . and to challenge the conviction or sentence collaterally through a post-conviction proceeding," excepting the right to appeal "any punishment in excess of the statutory maximum" or any sentence exceeding the high end of Henson's calculated Guidelines range.  R. 19 (Plea Agreement at ¶ 18) (Page ID #77).  The plea agreement also preserves Henson's right to bring a claim, on direct appeal or collateral review, of ineffective assistance or prosecutorial misconduct.  *Id.*  Here, however, we need not address the government's waiver argument because, as discussed below, Henson's constitutional challenge fails even on de novo review.

**2. Forfeiture**

In the alternative, the government argues that Henson failed to raise a challenge to the constitutionality of his sentence below, therefore forfeiting his right to raise the issue on appeal. As a result, the government argues, we should either decline to address the issue or review the district court's determination for plain error. *See Burrell*, 114 F.4th at 549 ("[W]e apply the plain-error standard of review to forfeited claims."); *United States v. Ramamoorthy*, 949 F.3d 955, 962 (6th Cir. 2020) ("[P]lain-error review of a forfeited claim is 'permissive, not mandatory.'") (quoting *United States v. Olano*, 507 U.S. 725, 735 (1993)).

The government's argument is complicated by the fact that Henson clearly wished to bring a *Bruen* challenge below, but defense counsel refused to do so on Henson's behalf. At Henson's change of plea hearing, defense counsel noted that "there's a motion that's out there, a *Bruen* motion, that he wanted me to file on his behalf" but that such a motion would "not factually or legally fit the facts in this case" and would not be "valid to the case that we have" because "there is no Second Amendment right to carry a gun if you've been convicted in state court." R. 31 (Plea Hr'g Tr. at 6–7) (Page ID #205–06). As a result, defense counsel informed the district court that he would "not file a motion that's frivolous." *Id.* at 7 (Page ID #206). Further complicating the matter, the district court agreed with defense counsel, stating that Henson's right to have a firearm was "[p]rohibited by reason of being a felon." *Id.*[3]

We conclude that Henson did not forfeit his constitutional challenge. Although stating that he refused to file a motion to dismiss the indictment on *Bruen* grounds, defense counsel

---

[3]Notably, this exchange occurred in January 2024, six months before this court issued its decision in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), in which we held that § 922(g)(1) may be unconstitutional as applied to certain individuals who demonstrate to the court that, as a factual matter, they are not dangerous. *Id.* at 657–58.

nevertheless notified the district court of Henson's desire to pursue an as-applied constitutional challenge. And the district court, by agreeing that Henson's constitutional challenge would have been meritless because Henson's right to carry a firearm was "[p]rohibited by reason of being a felon," ruled on the record—albeit in a summary fashion—that Henson's constitutional challenge would have failed. *Id.* In light of the specific facts of this case, and because the district court briefly addressed and rejected Henson's *Bruen* challenge, we conclude that Henson raised his constitutional challenge below.

### 3. Merits of Henson's As-Applied Constitutional Challenge

Regardless of whether Henson waived his right to raise on appeal or adequately preserved his constitutional challenge, Henson's as-applied *Bruen* challenge fails even upon de novo review. *See United States v. Gailes*, 118 F.4th 822, 824 (6th Cir. 2024) (stating that the appropriate standard of review for a defendant's constitutional challenge to § 922(g)(1) is de novo).

In *Bruen*, the Supreme Court held that any regulation of firearm ownership or possession must be consistent with our nation's "history and tradition" in order to be constitutional under the Second Amendment. 597 U.S. at 22; *see also United States v. Rahimi*, 602 U.S. 680, 692 (2024) (holding that, in evaluating laws regulating firearm ownership and possession, we are to consider whether the "regulation is consistent with the principles that underpin our regulatory tradition"). We applied both *Bruen* and *Rahimi* in evaluating the constitutionality of § 922(g)(1) in *United States v. Williams*, in which we concluded that the statute "is constitutional on its face and as applied to dangerous people." 113 F.4th at 662–63. But we also held that, because § 922(g)(1) bars the possession of firearms by all persons convicted of a felony, regardless of the character of the underlying felony, "history shows that § 922(g)(1) might be susceptible to an as-applied

challenge in certain cases." *Id.* at 657. Thus, in our circuit, a defendant who raises an as-applied challenge to the constitutionality of § 922(g)(1) may succeed if he can "make an individualized showing that he himself is not actually dangerous." *Id.* at 663.

Following *Williams*, to determine whether an individual defendant is dangerous, courts are to "make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction." *Id.* "[W]hen considering an individual's dangerousness, courts may evaluate a defendant's entire criminal record—not just the specific felony underlying his section 922(g)(1) prosecution." *Id.* Although we have avoided creating "bright categorical lines" to determine what criminal conduct demonstrates dangerousness, we have noted that "violent crimes are at least strong evidence that an individual is dangerous." *Id.* at 658, 660.

Here, Henson argues that he is not dangerous because the felony conviction underlying his § 922(g)(1) prosecution—a 2020 conviction in Florida state court of Burglary of an Unoccupied Conveyance, in which Henson broke into an unoccupied truck and stole a lawnmower and for which he was sentenced to two years of probation, R. 24 (PSR at ¶ 28) (Page ID #169)—did not involve any harm to another person or pose a threat of danger. But *Williams* directs us to "evaluate a defendant's entire criminal record." 113 F.4th at 663. And Henson's criminal record includes convictions of disorderly conduct, obstruction, theft, attempted statutory burglary, and resisting arrest, among others. R. 24 (PSR at ¶¶ 23–30) (Page ID #167–70). Most significantly, Henson's criminal record includes two convictions of assault, one of which involved Henson punching another person in the side of the head. *Id.* at ¶¶ 26–27 (Page ID #168). Both of Henson's assault convictions necessarily involved "a crime against the body of another human being," such that

both convictions evidence Henson's dangerousness. *Williams*, 113 F.4th at 663. Henson's criminal history therefore prevents him from succeeding on a challenge to the constitutionality of his conviction under § 922(g)(1).

Henson argues that, because the dangerousness inquiry is a factual one, the proper course of action is to remand to the district court so that he may have the "opportunity to make an individualized showing that he himself is not actually dangerous." *Williams*, 113 F.4th at 663. But as in other cases involving defendants convicted under § 922(g)(1) after *Bruen* and prior to *Williams*, the district court in this case was not on notice that it should allow Henson the opportunity to make an individualized dangerousness showing. If the district court had been on notice of *Williams*'s instruction, the record evidence would have indisputably led the district court to conclude that Henson was dangerous enough to be constitutionally disarmed. *See, e.g.*, *United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025) (holding that remand for an individualized dangerousness showing was unnecessary where "the district court undisputably would have come to the conclusion that [the defendant] was a sufficiently dangerous person to warrant his disarmament" because defendant's criminal record included an armed robbery in which he shot another person in the leg); *United States v. Morton*, 123 F.4th 492, 500 (6th Cir. 2024) (holding that remand to the district court for a reassessment of dangerousness under *Williams* was unnecessary where the defendant's criminal record "demonstrates dangerousness, specifically that he has committed 'violent' crimes 'against the person'") (quoting *Williams*, 113 F.4th at 658).

Henson falls within the category of individuals who may be lawfully disarmed by reason of their dangerousness. Remand is thus not an appropriate remedy here. We conclude that

§ 922(g)(1) is constitutional as applied to Henson and affirm the district court's conclusion that Henson's challenge lacks merit.

### III.  CONCLUSION

We hold that Henson's guilty plea was knowing, intelligent, and voluntary and that his claim of ineffective assistance of counsel is better suited for collateral review given the lack of factual development at this stage.  And we hold that 18 U.S.C. § 922(g)(1) is constitutional as applied to Henson.  We therefore **AFFIRM** Henson's conviction.